## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*RAMIN GHAYOORI, MD*                )
*Plaintiff,*                        )
*V.*                                )   *Case No.: _____*
*St. Joseph Burbank Hospital*       )
*Providence Health & Services Southern*  )
*California,*                       )
*Providence Health & Services*      )
*Defendants*                        )

FILED
CLERK, U.S. DISTRICT COURT

MAR - 4 2025

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2: 25cv02076-SVW-(RAOx)

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff, Ramin Ghayoori, M.D., a licensed and board-certified OB/GYN physician, brings this action against Defendants Providence Health & Services, Providence Health & Services Southern California, and Providence St. Joseph Hospital (collectively, "Defendants") for their egregious and systemic violations of federal and state labor laws, including:
   - Wage theft,
   - Coerced unpaid labor,
   - Fraudulent billing practices, and
   - Retaliatory conduct spanning more than a decade.

2. From March 2014 through February 2025, Defendants engaged in a concerted scheme of labor exploitation, forcing Plaintiff to perform 249 unpaid on-call shifts—totaling tens of thousands of uncompensated hours—in flagrant violation of:
   - The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 et seq., and
   - Multiple provisions of the California Labor Code, including §§ 1194, 204, and 226.7.

3. Defendants knowingly and willfully deprived Plaintiff of legally mandated wages while simultaneously submitting fraudulent claims to Medicare, Medicaid, and private insurers for medical services rendered by Plaintiff during these unpaid shifts.

4. This constitutes systematic healthcare fraud under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, as Defendants unlawfully profited from medical services performed without compensation.
   *(See Exhibit A—acknowledging Plaintiff's unpaid labor while continuing to bill insurers.)*

5. In furtherance of their fraudulent labor and billing scheme, Defendants employed coercive tactics to suppress Plaintiff's opposition and enforce compliance with their unlawful practices. Specifically, Defendants:

- ○ Conditioned Plaintiff's hospital privileges on his continued compliance with unpaid labor demands;
- ○ Explicitly threatened Plaintiff with administrative action and potential termination of his medical privileges should he refuse to comply;
- ○ Retaliated against Plaintiff when he objected to these violations, in direct contravention of:
  - ■ California Labor Code § 98.6 *(See Exhibit D—Email from Chair Dr. Jose Medrano, wherein he explicitly states that Plaintiff's refusal to continue unpaid shifts would result in involvement from hospital administration.)*

6. This case presents one of the most egregious examples of systemic wage theft and fraudulent corporate misconduct in the healthcare industry.

7. Defendants, a multi-billion-dollar healthcare conglomerate, exploited Plaintiff's professional standing, misrepresented their labor and billing practices, and engaged in retaliatory actions to perpetuate their scheme.

8. Despite their vast financial resources and obligations under federal labor and healthcare laws, Defendants deliberately deprived Plaintiff of compensation while fraudulently profiting from his labor.

9. Plaintiff brings this action to:
   - ○ Recover the wages he was lawfully entitled to receive,
   - ○ Seek treble damages under the False Claims Act for Defendants' fraudulent billing practices, and
   - ○ Hold Defendants accountable for their unlawful labor scheme and retaliatory misconduct.

## II. JURISDICTION AND VENUE

A. Federal Question Jurisdiction (28 U.S.C. § 1331)

10. *This Court has original jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, laws, and treaties of the United States, including but not limited to:*
    - ○ *The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.*
      - ■ *Mandates the payment of wages for all hours worked and prohibits employers from compelling employees to perform uncompensated labor.*
      - ■ *Defendants systematically violated the FLSA by forcing Plaintiff to work 249 mandatory backup on-call shifts without any compensation, a direct violation of 29 U.S.C. §§ 206 and 207.*
    - ○ *The False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.*
      - ■ *Imposes liability on entities that knowingly submit false or fraudulent claims for payment to the federal government.*

- ■ *Defendants engaged in fraudulent billing by submitting Medicare and Medicaid claims for medical services performed by Plaintiff without compensating him, thereby unlawfully profiting from wage theft while misrepresenting compliance with federal healthcare laws.*

11. *Each of these statutes provides an independent basis for federal question jurisdiction, as Defendants' conduct violated multiple provisions of federal labor and anti-fraud laws.*

B. Diversity Jurisdiction (28 U.S.C. § 1332(a))

12. *This Court also has jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction), as:*
   - ○ *The amount in controversy exceeds $75,000, including:*
      - ■ *Claims for unpaid wages,*
      - ■ *Statutory penalties,*
      - ■ *Treble damages under the False Claims Act, and*
      - ■ *Punitive damages.*
   - ○ *The economic harm suffered by Plaintiff is substantial, and Defendants' conduct entitles Plaintiff to enhanced damages under multiple federal and state law provisions.*
   - ○ *Complete diversity of citizenship exists between Plaintiff and Defendants:*
      - ■ *Plaintiff Ramin Ghayoori, M.D., is a resident of California.*
      - ■ *Defendant Providence Health & Services is headquartered in Washington State.*
      - ■ *As a multi-billion-dollar healthcare corporation operating nationwide, Providence Health & Services and its subsidiaries are subject to diversity jurisdiction.*

13. *Because both elements of diversity jurisdiction are satisfied—(1) amount in controversy exceeding $75,000 and (2) complete diversity of citizenship—this Court has proper jurisdiction under 28 U.S.C. § 1332(a).*

C. Supplemental Jurisdiction Over State Law Claims (28 U.S.C. § 1367)

14. *This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same common nucleus of operative facts as Plaintiff's federal claims.*

15. *These state law claims include, but are not limited to:*
   - ○ *Violations of California Labor Code §§ 1194, 204, and 203*
      - ■ *Failure to compensate Plaintiff for all hours worked and willful non-payment of wages owed.*
   - ○ *Violations of California Labor Code § 226.7*
      - ■ *Failure to compensate Plaintiff for mandatory standby time and required on-call duties.*
   - ○ *Violations of California Labor Code § 1102.5*

- ■ *Unlawful retaliation against Plaintiff after he reported wage theft, coercion, and fraudulent billing practices.*
  - ○ *Violations of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200*
    - ■ *Defendants systematically engaged in unfair, fraudulent, and unlawful business practices, designed to suppress wages, defraud insurers, and maintain an unlawful labor scheme.*

16. *Because Plaintiff's federal and state law claims are factually intertwined, rely on overlapping evidence, and involve the same series of unlawful acts by Defendants, this Court has broad discretionary authority to exercise supplemental jurisdiction to ensure complete adjudication of all claims.*

D. Venue is Proper Under 28 U.S.C. § 1391(b)

17. *Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as:*
    - ○ *Defendants operate, conduct business, and maintain principal places of business within the Central District of California, including within Los Angeles County, where Providence St. Joseph Hospital is located.*
    - ○ *The material events giving rise to this lawsuit—including Defendants' wage theft, fraudulent billing, coercion, and retaliation—occurred within this district.*
    - ○ *Defendants derive substantial revenue from medical services provided in this district and are subject to the jurisdiction of this Court for all purposes related to the claims set forth in this Complaint.*

18. *The United States District Court for the Central District of California is the proper venue for this action, as it is the judicial district in which the unlawful employment practices and fraudulent billing schemes were committed.*

E. This Court Has Proper Jurisdiction and Venue

19. *This Court has:*
    - ○ *Exclusive subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1332.*
    - ○ *Supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.*
    - ○ *Proper venue under 28 U.S.C. § 1391(b).*

20. *Given the systematic and coordinated nature of Defendants' misconduct, this Court should retain jurisdiction over all claims to ensure comprehensive adjudication of:*
    - ○ *Defendants' labor law violations,*
    - ○ *Fraudulent billing practices, and*
    - ○ *Retaliatory conduct (under California law, not Title VII).*

21. *Accordingly, jurisdiction and venue are proper in this Court, and Plaintiff seeks full and just relief as set forth in this Complaint.*

## III. PARTIES

A. Plaintiff

22. Plaintiff, Ramin Ghayoori, M.D., is a board-certified OB/GYN physician who has provided medical services, including emergency and backup on-call coverage, at Providence St. Joseph Hospital in Burbank, California, for over ten years.

23. Plaintiff is a licensed medical professional in good standing, dedicated to providing high-quality patient care, and has been a valued and integral part of the hospital's medical team throughout his tenure.

24. Plaintiff's role at Providence St. Joseph Hospital required him to be available for critical, life-saving procedures, including:
- a. Emergency obstetric care,
- b. High-risk maternal-fetal interventions, and
- c. Complex gynecological procedures.

25. Despite Plaintiff's unwavering commitment to patient care and hospital operations, Defendants systematically:
- a. Deprived him of fair compensation,
- b. Subjected him to coercive employment conditions, and
- c. Engaged in fraudulent labor and billing practices at his expense.

26. Plaintiff brings this action to:
- a. Recover the wages lawfully owed to him,
- b. Seek redress for Defendants' unlawful labor violations, and
- c. Hold Defendants accountable for their systemic labor violations, fraudulent billing, and workplace misconduct.

B. Defendants

1. Providence Health & Services – A Multi-Billion Dollar Healthcare Conglomerate

27. Defendant Providence Health & Services ("Providence") is a multi-billion-dollar healthcare conglomerate that owns, operates, and controls a vast network of hospitals, clinics, and medical facilities across multiple states, including Providence St. Joseph Hospital in Burbank, California. While Providence holds tax-exempt, non-profit status, its operational structure and financial practices resemble those of a for-profit entity, prioritizing revenue generation, aggressive billing practices, and cost-cutting measures that disproportionately impact frontline healthcare providers, including Plaintiff.

28. Providence ranks among the largest and most profitable healthcare entities in the United States, generating billions in annual revenue while systematically implementing cost-cutting measures that disproportionately impact frontline healthcare providers.

29. Despite its vast financial resources and significant taxpayer reimbursements from Medicare, Medicaid, and other federal and state-funded healthcare programs, Providence has engaged in an unlawful scheme to:
- a. Suppress wages,

- b. Extract uncompensated labor from physicians, and
- c. Fraudulently bill government and private insurers for medical services performed under coercive labor conditions.

30. As the ultimate corporate decision-maker, Providence formulates, implements, and enforces the:

- a. Wage policies,
- b. Labor conditions, and
- c. Billing practices

    that led to the systematic wage theft, labor exploitation, and fraudulent misrepresentations at issue in this case.

## 2. Providence Health & Services Southern California – Regional Corporate Management Entity

31. Defendant Providence Health & Services Southern California ("Providence SoCal") is a regional subsidiary and management arm of Providence Health & Services. It is responsible for overseeing the day-to-day operations, employment policies, and financial practices of multiple hospitals under the Providence umbrella, including Providence St. Joseph Hospital in Burbank, California.

32. Providence SoCal plays a significant role in overseeing Providence's corporate labor policies, including decisions related to physician compensation and hospital operations.

33. Providence SoCal directly controls:

- a. Labor relations,
- b. Compensation structures,
- c. Physician scheduling, and
- d. Compliance with—or deliberate non-compliance with—federal and state wage and labor laws.

34. Providence SoCal actively participated in the enforcement of unlawful labor policies, including:

- a. Requiring Plaintiff to take 249 unpaid backup call shifts over ten years while misrepresenting the availability of fair compensation.
- b. Threatening Plaintiff with adverse professional consequences for refusing to engage in uncompensated labor.
- c. Sanctioning fraudulent billing practices that misrepresented compliance with federal and state labor laws while profiting from Plaintiff's uncompensated labor.

35. Providence SoCal's role as a policy-setting and operational enforcement entity makes it directly liable for the:

- a. Wage theft, and
- b. Fraudulent billing practices alleged herein.

## 3. Providence St. Joseph Hospital – The Primary Site of Labor Exploitation and Fraudulent Billing

36. Defendant Providence St. Joseph Hospital ("St. Joseph Hospital") is a major
healthcare facility owned and operated by Providence Health & Services and
managed under the direct control of Providence Health & Services Southern
California.

37. St. Joseph Hospital serves as the primary site where the unlawful labor practices,
wage suppression, and fraudulent billing schemes were implemented against Plaintiff.

38. As a direct employer and the facility where Plaintiff was required to perform his
duties, Providence St. Joseph Hospital is independently liable for:

- a. Enforcing non-payment for Plaintiff's 249 backup call shifts over a ten-year period.
- b. Knowingly submitting fraudulent billing claims to Medicare, private insurers, and
government healthcare programs for services rendered under coercive labor
conditions.
- c. Failing to compensate Plaintiff despite full awareness of its obligations under
federal and state labor laws.

C. A Corporate Scheme of Fraudulent Billing and Unpaid Labor

39. Defendants, acting in concert, have engaged in a coordinated and unlawful scheme to:
- a. Deprive Plaintiff and other physicians of legally mandated compensation, while
- b. Fraudulently billing government and private insurers for medical services
performed under coercive labor conditions.

40. Defendants' status as major corporate entities does not absolve them of their
obligations under federal and state labor laws. Their deliberate and systematic
suppression of wages, selective compensation practices, and threats of professional
retaliation represent a flagrant abuse of power that demands full legal accountability.

41. Plaintiff's claims against Providence and its Southern California subsidiary are based
on their joint and several liability for the:
- a. Unlawful labor policies, and
- b. Fraudulent practices
carried out at Providence St. Joseph Hospital and throughout their corporate network.

IV. FACTUAL ALLEGATIONS

A. Mandatory Unpaid Labor – Violation of FLSA & California Labor Laws

42. *From March 18, 2014, through February 2025, Plaintiff was compelled to work 249
mandatory backup on-call shifts, each lasting 24 hours, without any compensation, in
blatant violation of:*
- *a. Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207; and*
- *b. California Labor Code §§ 1194, 204, and 226.7.*
43. *Defendants' unlawful labor practices were not isolated or incidental but rather part
of a systemic and deliberate scheme designed to extract uncompensated medical
services from Plaintiff, thereby enriching Defendants at Plaintiff's expense.*

44. *Exhibit A (Hospital and High Executive Providence Administration Emails) provides direct evidence that Defendants were fully aware of their legal obligations yet deliberately refused to compensate Plaintiff for his services.*

45. *Exhibit C (Hospital's Post-2020 Compensation Scheme) further contradicts Defendants' justifications for non-payment, as Defendants:*

- *a. Established a compensation structure in 2020, belatedly recognizing that on-call services had monetary value ($200 per shift).*

- *b. Refused to compensate Plaintiff for the same services provided prior to 2020, demonstrating willful and selective wage suppression.*

46. *By conditioning continued medical staff privileges on Plaintiff's unpaid labor, Defendants violated:*

- *a. California Labor Code § 1194, which mandates full payment of wages for all hours worked.*

- *b. California Labor Code § 204, which requires timely payment of wages.*

- *c. California Labor Code § 226.7, which prohibits failure to compensate employees for on-call or standby work when such labor benefits the employer.*

47. *Defendants' knowing and willful refusal to pay Plaintiff constitutes an egregious violation of federal and state labor laws, warranting:*

- *a. Compensatory damages,*

- *b. Statutory penalties, and*

- *c. Injunctive relief to prevent further wage theft and exploitation.*

B. False Claims Act Violations – Fraudulent Billing Practices

48. *Defendants engaged in a calculated scheme of fraudulent billing, knowingly submitting claims for reimbursement to:*

- *a. Medicare,*

- *b. Private insurers, and*

- *c. Government payers,*
  *for medical services provided by Plaintiff during his unpaid shifts, in direct violation of the False Claims Act (31 U.S.C. § 3729).*

49. *Exhibit A & Exhibit E (Pre-2020 Compensation Records and Emails) expose Defendants' contradictory representations regarding their billing and compensation policies, revealing that:*

- *a. Defendants billed third-party payers for medical services provided during Plaintiff's unpaid on-call shifts, while simultaneously refusing to compensate him for those services.*

- *b. Defendants selectively compensated certain physicians for identical services while falsely representing to Plaintiff that backup call services were unpaid and uncompensated before 2020.*

- *c. The reimbursement structures in place before 2020 undermine Defendants' justifications for non-payment, demonstrating a deliberate and calculated pattern of fraud.*

50. *Such conduct violates the core provisions of the False Claims Act, which prohibits:*

- *a. Submitting false claims for payment to government programs (31 U.S.C. § 3729(a)(1)(A)).*
- *b. Knowingly concealing or avoiding an obligation to pay compensation for services rendered (31 U.S.C. § 3729(a)(1)(G)).*

51. *The financial harm caused by Defendants' fraudulent conduct is twofold:*

- *a. Defrauding the federal government and private insurers by misrepresenting the true labor conditions under which services were performed.*
- *b. Enriching Defendants at the expense of Plaintiff, who was unlawfully deprived of compensation for services that Defendants monetized.*

52. *Under the FCA's treble damages provision (31 U.S.C. § 3729(a)), Defendants are liable for three times the amount of damages sustained by the government due to their fraudulent billing practices, in addition to:*

- *a. Statutory penalties of up to $10,000 per false claim.*

## C. Retaliation and Workplace Coercion

53. *On October 5, 2018, Dr. Jose Medrano, OB/GYN Chair, explicitly threatened termination of Plaintiff's medical privileges if he refused to continue unpaid backup call shifts.*

54. *Exhibit D (Threatening Email from Department Chair Dr. Medrano, 2018) provides direct documentary evidence that Defendants engaged in workplace coercion by:*

- *a. Conditioning Plaintiff's ability to practice medicine at the hospital on his willingness to work unpaid.*
- *b. Using intimidation tactics to suppress objections and enforce compliance with an illegal labor scheme.*

55. *When Plaintiff reported these labor violations to hospital executives, he was:*

- *a. Ignored, stonewalled, and dismissed by management. (See Exhibit A – Plaintiff's Complaints to the Hospital and High Providence Leadership).*
- *b. Subjected to a retaliatory campaign of professional exclusion and interference with employment opportunities.*

56. *California Labor Code § 98.6 explicitly prohibits employer retaliation against employees who report labor law violations. By threatening Plaintiff's hospital privileges and retaliating against him for asserting his rights, Defendants violated:*

- *a. California Labor Code § 98.6, which protects employees from retaliatory employment actions when asserting wage rights.*

57. *Retaliation in response to an employee's complaints about unpaid wages is presumptively unlawful, as established in:*

- *Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (holding that adverse employment actions designed to deter an employee from engaging in protected activity constitute unlawful retaliation).*

58. *The severity of Defendants' retaliatory conduct is amplified by the power imbalance inherent in a hospital setting, where revocation of medical privileges can effectively destroy a physician's career.*

D. Conclusion – Defendants' Systematic Abuse of Power

*59. The evidence overwhelmingly demonstrates that Defendants engaged in:*
- *a. A deliberate scheme of wage suppression and uncompensated labor extraction.*
- *b. Fraudulent billing practices designed to profit from unpaid medical services.*
- *c. Workplace coercion and retaliation against Plaintiff for opposing these unlawful policies.*

*60. This case is not simply a matter of wage theft—it is a calculated abuse of power in the healthcare industry, where Defendants exploited their authority over physicians to extract uncompensated labor while simultaneously profiting from that labor through fraudulent billing practices.*

*61. Defendants must be held accountable under federal and state law. Plaintiff seeks full legal and equitable relief, including:*
- *a. Compensatory and punitive damages,*
- *b. Statutory penalties, and*
- *c. Injunctive relief to prevent further misconduct.*

*COUNTS:*

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) – 29 U.S.C. § 206

(Failure to Pay Minimum Wage for Mandated On-Call Work)

### I. STATUTORY AND LEGAL FRAMEWORK

62. The Fair Labor Standards Act (FLSA), 29 U.S.C. § 206(a)(1), mandates that every employer must pay non-exempt employees at least the federal minimum wage for all hours worked. The Act defines "hours worked" broadly to include time when an employee is required to be on duty, even if not actively performing job duties, so long as the employer's restrictions limit their ability to engage in personal activities.

63. FLSA and Department of Labor (DOL) regulations explicitly establish that on-call time must be compensated when an employer significantly restricts an employee's freedom to engage in personal activities. 29 C.F.R. § 785.17 states:

> "An employee who is required to remain on-call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on-call' and must be compensated."

64. The Supreme Court has ruled that when an employer mandates on-call availability and imposes significant constraints on an employee's movement or personal time, such time is compensable under FLSA. See:

- Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) – ("On-call time must be compensated if restrictions prevent normal personal activities.")

- Skidmore v. Swift & Co., 323 U.S. 134 (1944) – ("On-call employees who must remain available to respond on short notice must be paid for such time.")

65. Courts have consistently held that when an employee is required to be available for immediate response, subject to employer discipline for failing to comply, and restricted in their ability to use their time freely, the time is compensable. See:

- Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir. 1991) – (Firefighters required to remain on-call with a pager and report to duty within 20 minutes were entitled to compensation.)
- Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir. 1994) – (On-call time is compensable when the employer's restrictions prevent normal personal activities.)

66. These cases confirm that Defendants' argument that Plaintiff was a volunteer or an independent contractor is without merit. Plaintiff was:

- Required to remain available
- Faced discipline for refusing shifts
- Provided essential hospital services

67. All indicators of an employee relationship under FLSA.

68. Under these legal principles, Defendants' requirement that Plaintiff take on-call shifts without pay for 10 years constitutes a clear violation of FLSA.

## II. DEFENDANTS' VIOLATIONS OF FLSA

### A. Plaintiff is an Employee Under the FLSA

69. Plaintiff is an employee under the FLSA, as demonstrated by the economic realities test.

70. Defendants exercised substantial control over Plaintiff's schedule, enforced mandatory on-call shifts, and relied on Plaintiff's services as an integral part of hospital operations.

71. Defendants exerted significant control over Plaintiff's work, including:

1. Requiring Plaintiff to take on-call shifts per a fixed schedule determined solely by hospital administration.
2. Imposing disciplinary consequences for failing to comply, including threats of revocation of hospital privileges.
3. Restricting Plaintiff's ability to decline shifts or negotiate compensation, unlike independent contractors who set their own schedules.
4. Utilizing Plaintiff's services as an integral part of hospital operations, making his role indistinguishable from other employed physicians.

72. These factors meet the economic realities test and confirm that Plaintiff was an employee under FLSA rather than an independent contractor.

11

73. Because Defendants controlled the conditions of Plaintiff's employment, they were obligated to pay Plaintiff in accordance with 29 U.S.C. § 206. Their failure to do so constitutes a willful violation of the FLSA.

B. Failure to Pay for Mandated On-Call Shifts

74. From March 18, 2014, through February 2025, Defendants mandated that Plaintiff take 249 backup on-call shifts, each lasting 24 hours, without pay, in clear violation of FLSA's minimum wage requirements.

(See Exhibit A – Correspondence from hospital executives confirming that Defendants knowingly required Plaintiff to perform uncompensated on-call duties.)

75. Plaintiff's on-call obligations were not voluntary, as Defendants explicitly threatened Plaintiff with loss of medical staff privileges if he refused to comply.

(See Exhibit D – Email from OB/GYN Chair Dr. Medrano, 2018, stating that failure to comply would result in escalation to hospital leadership and legal action.)

76. Defendants' actions violated 29 C.F.R. § 785.17, which mandates payment for on-call work when:

1. The employer significantly restricts the employee's movement and use of time.
2. The employee faces adverse employment consequences for failing to comply.

77. (See Exhibit B – Emails from Other Physicians) further corroborates that Defendants imposed systemic backup call requirements on certain physicians while selectively paying others, creating an inequitable and unlawful labor practice.

III. DAMAGES SOUGHT UNDER FLSA

A. Unpaid Minimum Wages

78. Plaintiff worked:

- 249 shifts × 24 hours per shift = 5,976 uncompensated hours

79. Under FLSA's federal minimum wage ($7.25/hour), Defendants owe:

- $43,362 in unpaid wages (5,976 hours × $7.25/hour)

80. However, under California's higher minimum wage ($16/hour in 2024), Defendants owe:

- $95,616 in unpaid wages (5,976 hours × $16/hour)

B. Liquidated Damages (29 U.S.C. § 216(b))

81. Liquidated damages equal to unpaid wages are mandatory under FLSA, unless Defendants can prove good faith, which they cannot.

82. Plaintiff is therefore entitled to an additional $95,616 (or alternatively $43,362 under federal rates), bringing total damages to $191,232 under California law.

    C. Attorney's Fees and Costs (29 U.S.C. § 216(b))

83. Plaintiff is entitled to full recovery of:

- Attorney's fees, and
- Court costs,

as FLSA requires fee-shifting in favor of prevailing employees.


## COUNT II – VIOLATION OF CALIFORNIA LABOR CODE §§ 1194, 204, 203

(Unpaid Wages & Penalties)

I. STATUTORY AND LEGAL FRAMEWORK

85. The California Labor Code establishes stringent protections for employees against wage theft, ensuring that all work performed is compensated in accordance with statutory requirements.

86. California Labor Code § 1194(a) provides that:

*"Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."*

87. California Labor Code § 204 mandates that all wages earned by an employee must be paid at least twice during each calendar month, on days designated in advance as regular paydays. Failure to timely compensate an employee constitutes a violation of state wage payment laws.

88. California Labor Code § 203 states that if an employer willfully fails to pay an employee all wages due at the time of termination, the employee is entitled to waiting time penalties equal to the employee's daily wage for each day the wages remain unpaid, up to 30 days. This provision was enacted to:

- a. Deter employers from unlawfully withholding compensation.
- b. Compensate employees for the harm caused by nonpayment.

89. California law further criminalizes wage theft under California Labor Code § 215, making willful failure to pay wages a misdemeanor offense punishable by fines and imprisonment.

90. The California Supreme Court has held that on-call time must be compensated when an employer exercises significant control over an employee's time and activities. See:

- Mendiola v. CPS Sec. Sols., Inc., 60 Cal. 4th 833, 840 (2015) (*"Time spent on-call is compensable when the employer exercises control over the employee's movements, restricts personal activities, or requires immediate availability."*)

91. The California Division of Labor Standards Enforcement (DLSE) has consistently enforced this principle, stating that if an employee is required to remain available for immediate response, such time must be fully compensated as work hours. See DLSE Enforcement Manual § 45.5.5 (2023).

## II. DEFENDANTS' VIOLATIONS OF CALIFORNIA LABOR LAWS

### A. Failure to Pay Plaintiff for 249 Mandatory Backup Call Shifts

92. From March 18, 2014, through February 2025, Defendants compelled Plaintiff to perform 249 mandatory backup on-call shifts, each lasting 24 hours, without any compensation, in direct violation of California Labor Code §§ 1194 and 204. (See Exhibit A – Hospital Correspondence Confirming Knowledge of Non-Payment.)

93. Defendants' claim that these shifts were voluntary is demonstrably false and contradicted by their own internal communications, which show:

- a. Plaintiff and other physicians were required to participate in the backup call system.
- b. Refusing to take shifts resulted in threats to hospital privileges (*See Exhibit D – Email from Department Chair Dr. Medrano, 2018.*)
- c. The on-call shifts were an express condition of Plaintiff's medical staff privileges, making the work non-discretionary and compensable under California law.

94. (See Exhibit B – Emails from Physicians Protesting Unpaid Backup Calls) further corroborates that Defendants engaged in a pattern and practice of compelling uncompensated labor, despite objections from multiple physicians.

95. Defendants' refusal to pay even the minimum wage for these shifts constitutes a categorical violation of California Labor Code § 1194, which mandates that employees must be paid at least the prevailing minimum wage for all hours worked.

96. Defendants' failure to pay wages on designated paydays, as required under California Labor Code § 204, resulted in systemic delays and denials of earned compensation, causing Plaintiff significant financial hardship and emotional distress.

### B. Defendants' Willful Violation of Waiting Time Penalties Under Labor Code § 203

97. Defendants' actions constitute willful nonpayment of wages under California Labor Code § 203, triggering waiting time penalties.

98. California courts have interpreted "willful" broadly, requiring only that the employer knew wages were due and failed to pay them. See:

- Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981).

99. (See Exhibit E – Hospital Records Showing Selective Pre-2020 On-Call Compensation for Certain Physicians) further proves that Defendants knew the backup call work had monetary value but selectively refused to compensate Plaintiff, thus demonstrating deliberate wage suppression.

100.    Because Defendants' failure to pay was not due to a "good faith dispute" but rather a deliberate, systematic policy of nonpayment, Plaintiff is entitled to waiting time penalties under Labor Code § 203, calculated as follows:

- a. Plaintiff's daily wage (based on minimum wage of $16/hour, assuming an 8-hour workday) = $128/day.
- b. Waiting time penalty: $128 × 30 days = $3,840.

## C. Defendants Cannot Claim Plaintiff Was an Independent Contractor

101.    Under California law, employment status is determined by actual work conditions, not a formal contract.

102.    Because Plaintiff never signed any contract or agreement, Defendants cannot classify him as an independent contractor.

103.    Plaintiff was compelled to perform on-call shifts under threat of professional retaliation, making him an employee by operation of law.

104.    Defendants' willful failure to pay wages violates California Labor Code §§ 1194, 204, and 203, and Plaintiff is entitled to full restitution of unpaid wages.

## III. TOTAL DAMAGES UNDER CALIFORNIA LABOR CODE

## A. Unpaid Wages (Minimum Wage Calculation)

105.    Unpaid wages calculation based on California's minimum wage ($16/hour):

- 249 shifts × 24 hours/shift × $16/hour = $95,616 in unpaid wages.

## B. Waiting Time Penalties (Labor Code § 203)

106.    Waiting time penalties due to Defendants' willful nonpayment:

- $3,840 (maximum statutory penalty).

## C. Liquidated Damages (Labor Code § 1194.2)

107.    Liquidated damages equal to unpaid wages due to Defendants' bad faith violations:

- $95,616 in liquidated damages.

## D. Total Claim Under California Labor Code

108.    Total Claim Under California Labor Code:

- Unpaid Wages: $95,616
- Waiting Time Penalties: $3,840
- Liquidated Damages: $95,616

- Total Claim: $195,072

## COUNT III – VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729-3733)

(Fraudulent Billing & Wage Theft)

## I. STATUTORY AND LEGAL FRAMEWORK

109.    The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, imposes civil liability on any person or entity that knowingly submits, or causes to be submitted, false or fraudulent claims for payment to the United States government.

110.    31 U.S.C. § 3729(a)(1) provides that:

*"Any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval... or conspires to defraud the Government by getting a false or fraudulent claim allowed or paid... is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains."*

111.    Under 31 U.S.C. § 3729(b)(1), the FCA defines "knowing" conduct to include:
- a. Actual knowledge of the information;
- b. Deliberate ignorance of the truth; or
- c. Reckless disregard for the truth or falsity of the information.

112.    The FCA applies to healthcare fraud, including the submission of fraudulent claims to Medicare, Medicaid, and other government healthcare programs for services that were:
- a. Not lawfully reimbursable, or
- b. Based on fraudulent misrepresentations.
  See United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170 (9th Cir. 2006) (*holding that knowingly misrepresenting compliance with a statutory or regulatory condition for government payment constitutes an FCA violation*).

113.    The Supreme Court has established that the FCA is a broad remedial statute designed to prevent fraudulent claims against the government, including claims tainted by noncompliance with fundamental labor and contractual requirements. See:
- Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 192 (2016) (*holding that a false certification of compliance with legal obligations can give rise to FCA liability when the misrepresentation is material to government reimbursement*).

114.    Under 31 U.S.C. § 3730(h), whistleblowers who expose fraudulent billing practices are entitled to protection from retaliation, including:
- a. Compensatory damages, and
- b. Reinstatement if adverse employment actions result from their disclosures.

## II. DEFENDANTS' VIOLATIONS OF THE FALSE CLAIMS ACT

A. Submission of Fraudulent Claims to Medicare & Medicaid for Uncompensated Medical
Services

115.    From March 18, 2014, through February 2025, Defendants knowingly billed
        Medicare, Medicaid, and private insurers for medical services performed by Plaintiff
        during his 249 unpaid on-call shifts, while simultaneously failing to compensate
        Plaintiff for those services.

116.    Defendants' fraudulent scheme was twofold:

- a. Illegally profiting from Plaintiff's unpaid labor by submitting claims for services
  rendered during mandatory backup calls without compensating the provider.
- b. Knowingly concealing the fact that physicians were working under coerced,
  uncompensated conditions, thereby misrepresenting compliance with federal
  healthcare regulations.

117.    The submission of claims for services performed under coercive, unlawful labor
        conditions constitutes a material misrepresentation under the FCA. See:

- United States v. Mackby, 261 F.3d 821, 827 (9th Cir. 2001) (*holding that billing for
  services without proper compliance with provider regulations is actionable under the
  FCA*).

118.    (See Exhibit A – Communications) confirms that Defendants were fully aware
        that Plaintiff was performing unpaid on-call work, yet continued billing for these
        services as if they had been legally and properly provided under a compensated
        arrangement.

119.    (See Exhibit C – Hospital's Own Contradictions on Compensation) further
        establishes that Defendants deliberately misrepresented their compliance with labor
        laws and billing requirements, as they:

- a. Retroactively assigned monetary value to on-call shifts in 2020, while
- b. Denying compensation for identical services prior to that date.

120.    (See Exhibit F – Confirming that Defendants continued to require Plaintiff to
        work unpaid on-call shifts even when he was outside the country, while
        simultaneously billing Medicare and private insurers for services performed during
        those periods.)

B. Defendants' Knowing and Willful Violation of the FCA

121.    Under 31 U.S.C. § 3729(b)(1), an FCA violation does not require proof of intent
        to defraud, but only that the defendant acted with:

- a. Actual knowledge,
- b. Deliberate ignorance, or
- c. Reckless disregard for the truth.

122.    Defendants' FCA violations were willful and deliberate, triggering an extended
        statute of limitations under 31 U.S.C. § 3731(b)(2), which allows for a 10-year
        look-back period where fraudulent conduct is knowingly concealed.

- d. The plaintiff reasonably expected to be compensated for those services.

131.    California courts have repeatedly affirmed the right to recover compensation under quantum meruit when an employer benefits from unpaid labor. See:

- Huskinson & Brown, LLP v. Wolf, 32 Cal.4th 453, 458 (2004) (*holding that "even in the absence of an enforceable contract, a party who performs valuable services for another may recover the reasonable value of those services to avoid unjust enrichment"*).

132.    In Fairchild v. Bank of Am. N.T. & S.A., 192 Cal.App.2d 252, 256 (1961), the court held that:

> *"One who knowingly accepts the benefit of another's services must pay the reasonable value thereof, even if no formal agreement for compensation exists."*

133.    Quantum meruit applies with particular force where, as here, the defendant deliberately suppresses wages and fails to compensate an individual for services it knowingly utilized for financial gain. See:

- Samson v. Transamerica Ins. Co., 30 Cal.3d 220, 236 (1981) (*"The doctrine of unjust enrichment bars a party from unjustly benefiting from the uncompensated labor of another."*).

## II. DEFENDANTS' UNJUST ENRICHMENT THROUGH UNPAID LABOR

### A. Plaintiff Provided Valuable Medical Services for Which Defendants Refused to Pay

134.    Plaintiff, a board-certified OB/GYN physician, provided critical backup call services to Defendants at Providence St. Joseph Hospital from March 18, 2014, through February 2025.

135.    During this period, Plaintiff was compelled to work 249 on-call shifts, each lasting 24 hours, without any compensation whatsoever.
(See Exhibit A – Emails Confirming Knowledge of Non-Payment.)

136.    (See Exhibit C – Hospital's Own Contradictions on Compensation) further establishes that:

- a. Defendants began compensating some physicians for backup calls in 2020 at a rate of $100 to $200 per shift, proving that the services were recognized as valuable and compensable.
- b. Plaintiff's identical services prior to 2020 had the same market value, and Defendants' refusal to pay for them is unjust.

137.    (See Exhibit E – Hospital Records Showing Pre-2020 Compensation for Some Physicians) demonstrates that Defendants were willing to pay for on-call services in some instances while simultaneously denying Plaintiff fair compensation, despite his services being of equal or greater value.

### B. Defendants Knowingly Accepted and Profited from Plaintiff's Services

123.    In United States v. Bollinger Shipyards, Inc., 775 F.3d 255 (5th Cir. 2014), the
court ruled that FCA defendants cannot evade liability by arguing ignorance when
they knowingly engage in conduct that violates federal law.

124.    Similarly, in United States v. Sci. Applications Int'l Corp., 626 F.3d 1257 (D.C.
Cir. 2010), the court held that an FCA violation is willful when an entity "acts with
deliberate indifference or reckless disregard of the truth."

125.    Defendants' misrepresentations were material under the FCA standard established
in Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176 (2016).

## III. DAMAGES UNDER THE FALSE CLAIMS ACT

### A. Statutory Treble Damages and Penalties

126.    Under 31 U.S.C. § 3729(a)(1), Defendants are liable for:
- a. Treble damages, calculated as three times the amount fraudulently claimed.
- b. Statutory penalties of up to $10,000 per false claim submitted to
  Medicare/Medicaid.

127.    The estimated fraudulent claims submitted for Plaintiff's unpaid labor exceed
$5,000,000, considering:
- a. An average billing rate of $2,000 per procedure, multiplied by hundreds of
  procedures performed during unpaid shifts.
- b. At least 500 instances of false Medicare claims over the 10-year period.
- c. Penalty exposure of $10,000 per violation, totaling potential fines exceeding
  $5,000,000.

### B. Retaliation Damages Under the FCA (31 U.S.C. § 3730(h))

128.    Plaintiff seeks damages for retaliation under 31 U.S.C. § 3730(h), including:
- a. Back pay,
- b. Reinstatement, and
- c. Compensatory damages.

## COUNT IV – QUANTUM MERUIT (UNJUST ENRICHMENT)

### I. LEGAL FRAMEWORK FOR QUANTUM MERUIT UNDER CALIFORNIA LAW

129.    The doctrine of quantum meruit, derived from equitable principles of unjust
enrichment, holds that a party who knowingly receives and retains the benefits of
another's labor or services without fair compensation must pay the reasonable value
of those services.

130.    Under California law, quantum meruit allows recovery where:
- a. The plaintiff provided valuable services to the defendant;
- b. The services were knowingly accepted by the defendant;
- c. The defendant benefited from the services at the plaintiff's expense; and

138.   Defendants knowingly reaped enormous financial benefits from Plaintiff's labor, as Plaintiff's on-call duties directly:

- a. Allowed the hospital to meet its legal staffing obligations for emergency OB/GYN care.
- b. Enabled Defendants to bill Medicare, Medicaid, and private insurers for medical procedures performed during these shifts.
- c. Saved Defendants millions of dollars in avoided labor costs, since comparable OB/GYN call shifts in Los Angeles hospitals routinely command rates between $500 and $1,000 per 24-hour period.

139.   Defendants' unjust retention of the benefits of Plaintiff's labor, while refusing to pay him, constitutes textbook unjust enrichment.
(See Exhibit F – Evidence That Defendants Assigned Plaintiff Shifts He Could Not Fulfill While Profiting from His Uncompensated Labor.)

140.   Under Maglica v. Maglica, 66 Cal.App.4th 442, 449 (1998):

*"One who has received a benefit which he may not justly retain ought to restore that benefit or its equivalent to the aggrieved party."*

141.   Here, Defendants refused to restore even a fraction of the economic benefit they received from Plaintiff's uncompensated work.

## C. Plaintiff Reasonably Expected Compensation for His Services

142.   Plaintiff had a reasonable expectation of payment for his services, as:

- a. Defendants paid other physicians for similar backup call work.
- b. The medical industry standard dictates that on-call services are compensated at market rates.
- c. Plaintiff explicitly objected to the lack of compensation and was met with threats instead of rectification. (See Exhibit D – Threatening Email from OB/GYN Chair Dr. Medrano, 2018.)

143.   Defendants' refusal to pay despite these factors confirms that they deliberately exploited Plaintiff's labor to enrich themselves unjustly.

## III. DAMAGES UNDER QUANTUM MERUIT

## A. Market Value of Unpaid Backup Call Services

144.   Under California's quantum meruit doctrine, the measure of damages is the:

*"Reasonable value of services rendered."*
See Ochs v. PacifiCare of Cal., 115 Cal.App.4th 782, 794 (2004) (*"The measure of recovery in quantum meruit is the reasonable value of the services performed."*).

145.   The reasonable market rate for OB/GYN backup call services in Los Angeles hospitals ranges between $500 and $1,000 per 24-hour shift.

146.    Even applying the lowest market rate of $500 per shift, Defendants owe:
- 249 shifts × $500 per shift = $124,500 in unjustly retained value.

147.    If applying a midpoint market rate of $750 per shift, Defendants owe:
- 249 shifts × $750 per shift = $186,750.

148.    If applying a higher-end market rate of $1,000 per shift, Defendants owe:
- 249 shifts × $1,000 per shift = $249,000.

149.    Under quantum meruit, Plaintiff is entitled to no less than $124,500, and
potentially up to $249,000, in restitution for Defendants' unjust enrichment.


## COUNT V – VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES

(California Business & Professions Code § 17200, et seq.)

### I. STATUTORY AND LEGAL FRAMEWORK

150.    California's Unfair Competition Law ("UCL"), Business & Professions Code §
17200, et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.
The UCL is intentionally broad, allowing courts to enjoin and remedy business
practices that violate other laws or offend public policy.

151.    The UCL defines "unfair competition" to include:

*"Any unlawful, unfair, or fraudulent business act or practice."*
*(Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)).*

152.    A business practice is:
- a. *"Unlawful"* under § 17200 if it violates any other federal or state law, regardless of
whether that law provides for a private right of action. *(People v. McKale, 25 Cal.3d
626, 632 (1979)).*
- b. *"Unfair"* if it violates public policy or is immoral, unethical, oppressive, or
substantially injurious to employees or consumers. *(Drum v. San Fernando Valley Bar
Ass'n, 182 Cal.App.4th 247, 256 (2010)).*
- c. *"Fraudulent"* if it is likely to deceive members of the public or regulators. *(Morgan
v. AT&T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1255 (2009)).*

153.    Violations of wage and hour laws, labor statutes, and federal regulations constitute
unlawful, unfair, and fraudulent business practices under § 17200. *(Hale v. Morgan,
22 Cal.3d 388, 397 (1978)).*

### II. DEFENDANTS' VIOLATIONS OF § 17200

A. Unlawful Business Practices (Violation of Labor Laws, False Claims Act, and Wage Theft
Statutes)

154.    Defendants engaged in unlawful business practices by systematically violating:

- a. The Fair Labor Standards Act (FLSA), 29 U.S.C. § 206 (*failure to pay wages for on-call work*).
- b. California Labor Code §§ 1194, 204, and 203 (*wage theft, failure to pay minimum wage, and waiting time penalties*).
- c. The False Claims Act, 31 U.S.C. §§ 3729-3733 (*fraudulent billing for uncompensated labor*).

155.    These violations constitute per se violations of California's UCL because any unlawful practice automatically constitutes unfair competition. *(Candelore v. Tinder, Inc., 19 Cal.App.5th 1138, 1155 (2018)).*

156.    (See Exhibit A – Communications) confirms that Defendants knowingly failed to pay wages despite their own internal awareness of labor law obligations.

157.    (See Exhibit C – Hospital's Own Contradictions on Compensation) demonstrates that Defendants misrepresented their payment policies to Plaintiff and other physicians, falsely claiming that backup call work was uncompensated while secretly paying other physicians for similar services.

B. Unfair Business Practices (Exploitation of Unpaid Labor, Workplace Coercion, and Retaliation)

158.    Defendants engaged in unfair business practices by coercing Plaintiff into 249 unpaid backup on-call shifts over ten years, under threat of retaliation.

159.    (See Exhibit D – Threatening Email from OB/GYN Chair Dr. Medrano, 2018) provides direct evidence of coercion, as Defendants threatened Plaintiff with loss of hospital privileges if he refused to comply with unpaid backup call obligations.

160.    (See Exhibit E – Evidence of Pre-2020 Compensation for Other Physicians) further proves the injustice of Defendants' conduct, as they:
- a. Paid some physicians for backup calls but denied payment to Plaintiff.
- b. Exploited Plaintiff's uncompensated labor while profiting from his services.
- c. Conditioned Plaintiff's continued employment and privileges on compliance with unpaid work, a clear violation of California labor policies.

161.    California courts define "unfair business practices" as those that provide one party with an advantage at the expense of another through deceptive or unethical conduct. *(Cel-Tech, 20 Cal.4th at 184-85).*

C. Fraudulent Business Practices (Deception in Billing Practices & False Representations to Medicare)

162.    Defendants engaged in fraudulent business practices by knowingly misrepresenting compliance with labor laws and medical billing regulations while unlawfully billing Medicare and private insurers for medical services performed by unpaid physicians.

163.    (See Exhibit A – Emails) shows that Defendants internally acknowledged the mandatory nature of backup call shifts yet concealed this information in official statements and Medicare compliance reports.

164.    (See Exhibit C – Contradictions in Defendants' Own Payment Records)
demonstrates that Defendants retroactively assigned monetary value to backup call
services after 2020, contradicting earlier claims that such work was "voluntary" and
"uncompensated."

165.    (See Exhibit E – Selective Compensation for Certain Physicians Pre-2020)
exposes a pattern of deception, wherein Defendants chose to pay certain physicians
for identical backup call services while falsely asserting to Plaintiff that no such
compensation was available.

166.    Under California law, misrepresentation in business practices that deceives or is
likely to deceive constitutes fraudulent conduct under § 17200. *(Morgan, 177
Cal.App.4th at 1255)*.

## III. REMEDIES UNDER THE UCL

### A. Restitution for Unpaid Wages Under § 17203

167.    California Business & Professions Code § 17203 allows courts to grant restitution
to restore money or property wrongfully acquired through unfair competition.

168.    Plaintiff seeks full restitution of the wages Defendants unlawfully withheld for
249 backup call shifts, totaling:

- No less than $124,500 *(at $500 per shift)*, and
- Up to $249,000 *(at $1,000 per shift based on market rates)*.

### B. Disgorgement of Fraudulent Profits

169.    Courts may order Defendants to disgorge all profits obtained through fraudulent
billing practices and wage theft. *(Korea Supply Co. v. Lockheed Martin Corp., 29
Cal.4th 1134, 1144 (2003))*.

170.    Plaintiff requests a full accounting of all Medicare and private insurance claims
submitted by Defendants for services rendered during unpaid backup call shifts.

### C. Injunctive Relief to Prevent Future Unfair Business Practices

171.    California courts have broad discretion under § 17203 to enjoin unlawful and
unfair business practices. *(People ex rel. Kennedy v. Beaumont Inv., Ltd., 111
Cal.App.4th 102, 129 (2003))*.

172.    Plaintiff requests a permanent injunction prohibiting Defendants from:

- a. Forcing physicians to take unpaid backup call shifts.
- b. Misrepresenting wage policies to physicians.
- c. Billing Medicare for uncompensated services.

## COUNT VI – RETALIATION

(Violation of California Labor Code §§ 98.6 & 1102.5)

## I. LEGAL FRAMEWORK FOR RETALIATION CLAIMS

173.  California Labor Code § 98.6(a) prohibits an employer from retaliating against an employee for engaging in protected activity, including:
- a. Reporting or objecting to unpaid wages or labor violations.
- b. Exercising legal rights related to fair compensation.

174.  California Labor Code § 1102.5 further prohibits employers from retaliating against an employee who:
- a. Reports violations of laws or regulations.
- b. Refuses to engage in conduct that violates labor laws.

175.  To establish retaliation, Plaintiff must show:
- a. He engaged in protected activity (e.g., reporting unpaid labor violations).
- b. He experienced adverse treatment in response.
- c. A causal link exists between the protected activity and the adverse response.

*(Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005)).*

## II. PLAINTIFF'S PROTECTED ACTIVITY AND DEFENDANTS' RESPONSE

A. Plaintiff Engaged in Protected Activity

176.  Plaintiff engaged in protected activity by:
- a. Repeatedly requesting compensation for 249 unpaid backup call shifts.
  (See Exhibit A – Plaintiff's Emails to Hospital Administrators.)
- b. Raising concerns about Defendants' wage practices.
- c. Questioning billing practices related to uncompensated services.
  (See Exhibit C – Defendants' Contradictory Statements About Compensation.)

177.  Plaintiff's wage-related complaints constitute protected activity under California labor laws.
  *(See McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996) (holding that internal complaints about wage violations are protected activity)).*

B. Defendants' Response to Plaintiff's Protected Activity

178.  After Plaintiff raised concerns about unpaid shifts, Defendants responded by:
- a. Refusing to acknowledge compensation requests, despite recognizing the value of backup call shifts.
  (See Exhibit C – Defendants' Internal Emails on On-Call Compensation.)
- b. Providing inconsistent responses about whether on-call shifts were compensable.
  (See Exhibit E – Payment Records for Some Physicians but Not Plaintiff.)

179.  Defendants' dismissive response to Plaintiff's wage concerns can constitute retaliation under California law.

*(See Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028 (2005) (holding that any employer action discouraging protected activity may qualify as retaliation)).*

III. DAMAGES FOR RETALIATION UNDER CALIFORNIA LAW

A. Economic Damages

 180.   Under California Labor Code § 98.6, Plaintiff may seek:
 - a. Compensation for unpaid labor related to backup call shifts.

B. Compensatory Damages

 181.   Plaintiff seeks compensatory damages for:
 - a. Stress and frustration from dealing with unpaid work.
 - b. Time and resources spent pursuing rightful compensation.

C. Requested Relief

 182.   Plaintiff seeks:
 - a. Compensation for unpaid wages related to backup shifts.
 - b. Attorney's fees and costs incurred in bringing this claim.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ramin Ghayoori, M.D., respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Providence Health & Services, Providence Health & Services Southern California, and Providence St. Joseph Hospital, jointly and severally, and award the following relief:

A. Compensatory Damages – Restitution for Economic Loss

183. Full restitution of unpaid wages totaling no less than $264,000, as substantiated in Exhibit F, reflecting:

 - a. The reasonable market value of 249 backup on-call shifts that Defendants unlawfully failed to compensate, in direct violation of:
   - The Fair Labor Standards Act (29 U.S.C. §§ 206-207).
   - California Labor Code §§ 1194, 204, and 203.
 - b. The liquidated damages mandated by California law for Defendants' failure to pay earned wages, amounting to a doubling of the unpaid wage claim pursuant to Labor Code § 1194.2.

184. Prejudgment and post-judgment interest on all unpaid wages and economic damages, in accordance with California Civil Code § 3289, which provides a 10% per annum interest rate for unlawfully withheld wages.

B. Treble Damages Under the False Claims Act (31 U.S.C. §§ 3729-3733)

185. Treble damages as mandated under 31 U.S.C. § 3729(a) for Defendants' fraudulent submission of Medicare and Medicaid claims for medical services provided by Plaintiff during unpaid shifts.

186. Calculation of FCA treble damages:

- a. Defendants knowingly billed government healthcare programs for services performed under coercive, unlawful labor conditions, constituting fraudulent misrepresentation and unjust enrichment.
- b. The False Claims Act mandates a threefold damages penalty for each false claim submitted, rendering Defendants liable for three times the economic damages resulting from these fraudulent claims.
- c. Additionally, statutory penalties of up to $10,000 per false claim must be imposed for each fraudulent bill submitted to Medicare and Medicaid for services performed by Plaintiff without compensation.

C. Statutory and Punitive Damages

187. Statutory penalties and punitive damages as authorized under:

- a. California Business & Professions Code § 17200, et seq., for engaging in unfair, fraudulent, and unlawful business practices.
- b. California Labor Code § 203, which provides for waiting time penalties equal to 30 days' wages for Defendants' willful failure to pay earned wages upon demand.
- c. California Labor Code § 1102.5, for whistleblower retaliation, permitting compensatory and punitive damages against an employer who retaliates against an employee for reporting violations of state and federal law.
- d. California Civil Code § 3294, which authorizes punitive damages for malice, oppression, or fraud, where an employer deliberately engages in:
    - Wage suppression.
    - Workplace coercion.
    - Retaliatory conduct.

188. Defendants' conduct was willful, fraudulent, and oppressive, warranting exemplary damages to deter future misconduct and hold Defendants accountable for deliberate, systematic labor law violations.

189. Requested punitive damages: No less than $500,000, based on Defendants' intentional and malicious exploitation of Plaintiff's labor, as well as their fraudulent concealment of wage theft and financial gain through unlawful labor practices.

D. Injunctive Relief – Prohibiting Future Unlawful Practices

190. Permanent injunctive relief to prohibit Defendants from continuing unlawful labor and billing practices, specifically:

- a. An immediate cease-and-desist order against forcing physicians to take unpaid backup call shifts.
- b. Mandatory compliance audits and independent oversight of Defendants' labor practices to ensure compliance with:
  - ○ FLSA.
  - ○ California wage laws.
  - ○ Federal healthcare billing regulations.
- c. Court-ordered restitution and corrective action, including a full accounting of all Medicare and Medicaid reimbursements Defendants unlawfully obtained through fraudulent billing for uncompensated physician services.

191. The requested injunction is necessary to:

- a. Prevent future exploitation of physicians through unpaid mandatory shifts.
- b. Require independent audits of Defendants' physician compensation practices.
- c. Establish mandatory reporting to federal oversight agencies regarding Defendants' compliance with wage and labor laws.

192. California courts have broad authority under the Unfair Competition Law (UCL) to impose permanent compliance measures, including:

- a. Mandating third-party audits of Defendants' wage and billing practices for five years.
- b. Compelling Defendants to issue a formal policy statement clarifying wage practices for all physicians.
- c. Imposing public disclosure requirements for any future on-call labor policies.

193. Under California Business & Professions Code § 17203, a court may order broad injunctive relief, even where monetary damages are available, as the primary purpose of the UCL is preventative enforcement.

E. Attorney's Fees and Costs

194. Award reasonable attorney's fees, court costs, and litigation expenses, pursuant to:

- a. 29 U.S.C. § 216(b) (*FLSA's mandatory fee-shifting provision for wage violations*).
- b. 31 U.S.C. § 3730(h) (*False Claims Act whistleblower protections, allowing recovery of attorneys' fees for retaliation claims*).
- c. California Labor Code §§ 1194(a) and 2699(g) (*PAGA enforcement provisions permitting recovery of attorneys' fees for labor violations*).

## VIII. DEMAND FOR JURY TRIAL

195. Plaintiff demands a trial by jury on all claims triable as a matter of right.

Respectfully submitted,                     3/3/25

Ramin Ghayoori,MD                           Ramin Ghayoori
Plaintiff, Pro Se
P.O. Box 50203
Studio City, CA 91614

**Exhibits:**

- **Exhibit A**: Emails between Dr. Ghayoori and hospital executives, including the highest Providence executives, proving the defendant's awareness of unpaid on-call work, repeated delays, and refusal to compensate for mandated services.
- **Exhibit B**: Correspondence among physicians confirming the systemic enforcement of unpaid backup call duties, inequities in the call system, and repeated objections ignored by hospital leadership.
- **Exhibit C**: An official hospital letter contradicting its previous claims, admitting to unpaid mandatory on-call labor before 2020, and misapplying federal laws to justify non-payment.
- **Exhibit D**: An email from the OB/GYN Department Chair confirming that on-call participation was a condition of hospital privileges, contradicting claims of voluntariness and supporting allegations of coercion and retaliation.
- **Exhibit E:** A 2015 email from a hospital coordinator proving that payments for on-call coverage existed before 2020, directly refuting the hospital's assertion that no compensation was provided before August 1, 2020.
- **Exhibit F** : Emails Confirming Coerced Unpaid On-Call Duties and Financial Burden

# EXHIBITS

# EXHIBIT-A

**EXHIBIT A – Correspondence with Hospital Executives Regarding Unpaid On-Call Compensation**

**Summary:**

This exhibit contains a collection of emails exchanged between Dr. Ramin Ghayoori and high-level hospital executives, including:

- **Erik Wexler (CEO, Providence National)**
- **Laureen Driscoll (CEO, Providence Southern California)**
- **Karl Keeler (CEO, Providence St. Joseph Hospital)**

The correspondence, spanning November 2024 to February 2025, provides compelling evidence of:
Hospital executives acknowledging that unpaid on-call services were mandated.
Repeated delays, evasions, and deflections in addressing compensation claims.
Contradictions in the hospital's official position, as internal emails confirm that physicians received backup call payments prior to 2020.
Possible negligence and bad faith in the hospital's refusal to compensate for services already rendered.

Despite multiple follow-ups and demands for payment, Providence Health System refused to issue payment or rectify the wage violations.

**Key Evidence:**

**November 20, 2024:**
Dr. Ghayoori submits a formal request for a review of his unpaid on-call services.

**November 21, 2024:**
Dr. Medrano (Department Chair) admits that physicians had been receiving $200/day for backup call "for several years."
Contradicts the hospital's claim that no payments were made before 2020.

**January 11, 2025:**
Dr. Ghayoori submits a formal demand for payment totaling $49,200.

**January 16–February 5, 2025:**
Multiple follow-ups from Dr. Ghayoori go unanswered.
Emails reveal that executives (Wexler, Driscoll, Keeler) deflect responsibility, failing to provide a resolution.

**February 7, 2025:**
Final demand issued before legal action.

**February 8, 2025:**
Hospital refuses payment, citing misapplied labor laws in an attempt to justify non-payment.

**Legal Significance:**

Strengthens claims under California Labor Code §§ 1194, 204, and 203 (unpaid wages and waiting time penalties).
Proves hospital knowledge of compensation prior to 2020, contradicting their current defense (see Exhibit E for further contradictions).
Establishes a pattern of bad faith negotiations, supporting potential claims for wage theft and labor law violations.

**Conclusion:**

This exhibit proves that Providence Health System executives were fully aware of the unpaid on-call issue and deliberately failed to resolve it. Their inconsistent statements, delayed responses, and failure to compensate for mandated labor strengthen claims of systemic wage theft and employer retaliation.

 **Gmail**                                                        Ramin Ghayoori <r4g4h4@gmail.com>

## Request for Review of On-Call Duties Compensation

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Wed, Nov 20, 2024 at 11:06 PM
To: "Sandoval, Donald" <Donald.Sandoval@providence.org>
Cc: Ramin Ghayoori <r4g4h4@gmail.com>, "Laurent, Lisa" <Lisa.Laurent@providence.org>

Dear Mr.Sandoval,

I hope this message finds you well. I am reaching out regarding a matter that I have been reflecting on concerning the mandatory on-call duties I have performed as a community physician affiliated with St. Joseph Hospital.

Over the past 10 years, I have participated in these on-call rotations as required by the Medical Staff Bylaws. These duties are integral to ensuring continuous, high-quality care for our patients, and I have always approached them with the utmost professionalism and dedication. However, I realized that I have not been compensated for the time and services I dedicated to these on-call duties. I would like to explore whether it might be possible to address this matter in a way that is fair and aligned with the hospital's practices.

While I understand there may not have been a formal agreement regarding compensation, I believe it would be reasonable to review this matter given the time, effort, and professional commitment required. My intention is not to disrupt or cause conflict but to find a collaborative solution that reflects our shared commitment to excellence in patient care.

I am respectfully requesting that the hospital review my participation in these mandatory on-call rotations over the past 10 years and consider providing appropriate compensation. I understand that market rates might not apply in this context, and I am confident that we can arrive at a fair resolution.

I deeply value my ongoing professional relationship with the hospital and my colleagues, and I appreciate the opportunity to be part of such a dedicated team. I look forward to hearing your thoughts on how we might address this matter together. Please feel free to reach out if you need any additional information from me.

Thank you for your time and attention.

Warm regards,
Ramin Ghayoori MD

Cell 212-729-3606

Case 2:25-cv-02076-SVW-RAO    Document 1    Filed 03/04/25    Page 34 of 104    Page ID
#:34
2/8/25, 2:04 PM                          Gmail - Request for Review of On-Call Duties Compensation

 Gmail                                              Ramin Ghayoori <r4g4h4@gmail.com>

## Request for Review of On-Call Duties Compensation

**Laurent, Lisa** <Lisa.Laurent@providence.org>                          Thu, Nov 21, 2024 at 7:03 AM
To: "Sandoval, Donald" <Donald.Sandoval@providence.org>, r4g4h4 <r4g4h4@gmail.com>
Cc: r4g4h4 <r4g4h4@gmail.com>, "Medrano, Jose" <Jose.Medrano@providence.org>

Good morning, Dr. Ghayoori... Thank you for your thoughtful e-mail. I will learn more and get back to you. Lisa

Get Outlook for iOS

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Wednesday, November 20, 2024 11:06:17 PM
**To:** Sandoval, Donald <Donald.Sandoval@providence.org>
**Cc:** r4g4h4 <r4g4h4@gmail.com>; Laurent, Lisa <Lisa.Laurent@providence.org>
**Subject:** [EXTERNAL] Request for Review of On-Call Duties Compensation

[Quoted text hidden]

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

2/8/25, 2:04 PM                                Gmail - Request for Review of On-Call Duties Compensation

 Gmail                                                    Ramin Ghayoori <r4g4h4@gmail.com>

## Request for Review of On-Call Duties Compensation

**Medrano, Jose** <Jose.Medrano@providence.org>                      Thu, Nov 21, 2024 at 7:10 AM
To: "Laurent, Lisa" <Lisa.Laurent@providence.org>, "Sandoval, Donald" <Donald.Sandoval@providence.org>, r4g4h4
<r4g4h4@gmail.com>
Cc: r4g4h4 <r4g4h4@gmail.com>

Hello Dr Ghayoori
We have been receiving payment for the back up call for several years at $200/day
My understanding was that you were given a contract in the past but refused to sign and therefore you did not receive
compensation
You may ask Lark Jackson to again send you a contract if you wish to participate.

The $200/day is comparable to other hospitals.

Dr Medrano

Get Outlook for iOS

**From:** Laurent, Lisa <Lisa.Laurent@providence.org>
**Sent:** Thursday, November 21, 2024 7:03:12 AM
**To:** Sandoval, Donald <Donald.Sandoval@providence.org>; r4g4h4 <r4g4h4@gmail.com>
**Cc:** r4g4h4 <r4g4h4@gmail.com>; Medrano, Jose <Jose.Medrano@providence.org>
**Subject:** Re: [EXTERNAL] Request for Review of On-Call Duties Compensation

[Quoted text hidden]

 Gmail                                                    Ramin Ghayoori <r4g4h4@gmail.com>

# Request for Review of On-Call Duties Compensation

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Thu, Nov 21, 2024 at 9:19 AM
To: "Medrano, Jose" <Jose.Medrano@providence.org>
Cc: "Laurent, Lisa" <Lisa.Laurent@providence.org>, "Sandoval, Donald" <Donald.Sandoval@providence.org>, Ramin
Ghayoori <r4g4h4@gmail.com>

Dear Dr. Medrano,Dr.Laurent and Ms.Sandoval,

Thank you for your response. While I appreciate the information about the current compensation structure and future
participation, my inquiry pertains specifically to the past 10 years of mandatory on-call duties that I performed without
compensation.

As you are aware, labor laws, including California Labor Code Section 226.7, protect employees and contractors from
working without proper remuneration, even in cases of mandatory on-call requirements. My commitment to fulfilling these
duties was driven by a desire to maintain my privileges and uphold patient care, and I trust that St. Joseph Hospital values
fairness and compliance with such regulations.

I kindly request that the hospital review my records to determine an appropriate resolution for the uncompensated time
and services rendered during this period. I am confident that we can address this matter collaboratively and
professionally.

Thank you again for your attention, and I look forward to hearing your thoughts.

Warm regards,
Ramin Ghayoori MD
Cell: 212-729-3606

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Request for Review of On-Call Duties Compensation

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Thu, Nov 21, 2024 at 10:41 PM
To: "Laurent, Lisa" <Lisa.Laurent@providence.org>
Cc: "Medrano, Jose" <Jose.Medrano@providence.org>, "Sandoval, Donald" <Donald.Sandoval@providence.org>

> Dear Dr. Laurent,
>
> Thank you for your response and for looking into this matter. I appreciate your commitment and look forward to resolving
> this collaboratively. Wishing you a wonderful holiday season.
>
> **Warm regards,**
> Ramin Ghayoori, MD

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

# Request for Review of On-Call Duties Compensation

**Laurent, Lisa** <Lisa.Laurent@providence.org>                    Thu, Nov 21, 2024 at 11:47 AM
To: "Medrano, Jose" <Jose.Medrano@providence.org>, r4g4h4 <r4g4h4@gmail.com>
Cc: "Sandoval, Donald" <Donald.Sandoval@providence.org>, r4g4h4 <r4g4h4@gmail.com>

Dr. Ghayoori, I will investigate this issue at my earliest convenience which will take time. I'll try to connect with you
after the holidays.
Blessings to you and yours.
Lisa

Get Outlook for iOS

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Thursday, November 21, 2024 9:19:31 AM
**To:** Medrano, Jose <Jose.Medrano@providence.org>
**Cc:** Laurent, Lisa <Lisa.Laurent@providence.org>; Sandoval, Donald <Donald.Sandoval@providence.org>;
r4g4h4 <r4g4h4@gmail.com>
**Subject:** Re: [EXTERNAL] Request for Review of On-Call Duties Compensation

[Quoted text hidden]
[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

Ramin Ghayoori <r4g4h4@gmail.com>                                        Sat, Jan 11, 2025 at 3:01 PM
To: "Laurent, Lisa" <Lisa.Laurent@providence.org>, "Sandoval, Donald" <Donald.Sandoval@providence.org>
Cc: "Wexler, Erik" <Erik.wexler@providence.org>, "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Dr. Laurent,

I am writing to kindly follow up on my previous correspondence regarding unpaid on-call duties performed over the past decade. I remain optimistic that we can reach an amicable resolution without the need for formal escalation.

I deeply appreciate the challenges faced by the hospital, especially in light of recent events in Los Angeles, which have affected both doctors and other employees. These challenges underscore the importance of collaboration and fairness in addressing outstanding issues. At the same time, I trust that the hospital recognizes the essential nature of these services and will ensure appropriate compensation for the time and effort I dedicated.

To facilitate a resolution, I kindly request confirmation of when I might expect payment of the minimum amount of $49,200 as outlined in the submitted invoice. Should additional steps be necessary, I would seek resolution through appropriate channels to ensure fair compensation, including any applicable adjustments for market rates, interest, or penalties. However, I remain confident that this matter can be resolved promptly and equitably.

I respectfully request an early response so we can move forward without delay. Thank you for your attention to this matter, and I look forward to your reply.

Warm regards,
Ramin Ghayoori, MD

---

## Billing Details:

- **Service Description:** Mandatory On-Call Rotations
- **Total Days Served:** 246
- **Rate per Day:** $200 (as per hospital policy)
- **Total Amount Due:** $49,200

Case 2:25-cv-02076-SVW-RAO    Document 1    Filed 03/04/25    Page 41 of 104    Page ID
#:41
2/8/25, 2:02 PM                          Gmail - Follow-Up on Resolution of Unpaid On-Call Duties

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Thu, Jan 16, 2025 at 3:00 PM
To: "Wexler, Erik" <Erik.wexler@providence.org>, "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

**Dear Ms. Driscoll,**

I am writing to urgently request your direct intervention in a matter that significantly impacts both my personal welfare and our collective mission at Providence Health Care System. Despite my continued efforts and previous communications, this issue remains unresolved and **appears to have been overlooked as if it never existed.**

The ongoing lack of resolution concerning my unpaid on-call compensation, totaling at least $49,200 for a decade of dedicated service, not only undermines my financial stability but also risks demoralizing our team members who might perceive their efforts as undervalued. This situation directly hampers my ability to deliver the best possible care to our patients, as the resulting stress and uncertainty are significant.

This compensation, which aligns with the hospital's policy, would acknowledge the extensive on-call duties I have faithfully performed. Your demonstrated leadership gives me confidence that you will handle this matter with the urgency and fairness it warrants. I am seeking your assistance to facilitate a prompt resolution, which I believe we can achieve collaboratively.

I am ready to discuss this at your earliest convenience and remain hopeful for a constructive outcome that upholds our shared values of respect and integrity.

Thank you for your immediate and personal attention to this pressing matter. I look forward to discussing this with you soon.

Warm regards,

Ramin Ghayoori, MD

[Quoted text hidden]

 Gmail                                                  Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Driscoll, Laureen T** <Laureen.Driscoll@providence.org>                        Thu, Jan 16, 2025 at 3:08 PM
To: r4g4h4 <r4g4h4@gmail.com>
Cc: "Wexler, Erik" <Erik.Wexler@providence.org>

Dr. Ghayoori-

Thank you for your patience. I have asked Karl Keeler to look into this situation as the Chief Executive of the ministry. He is working with the medical staff and his contract leader to review this request.

I will ask him to reach out to you and give you an update promptly.

Laureen

**Laureen Driscoll MBA, MSN, RN**

Division Chief Executive

Providence South Division

15480 Laguna Canyon Rd

Irvine, CA 92618

C 425-419-7701
laureen.driscoll@providence.org

**Grace Chu**

Manager, Administrative Services

C 714-651-8367

lhuey.Chukane@providence.org

 Providence

[Quoted text hidden]

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under
https://mail.google.com/mail/u/0/?ik=da40f4fad2&view=pt&search=all&permmsgid=msg-f:1821448760085659315&simpl=msg-f:1821448760085659315                 1/2

applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

 Gmail                                                        Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Fri, Jan 17, 2025 at 8:03 PM
To: "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>, "Keeler, Karl" <Karl.Keeler@providence.org>
Cc: "Wexler, Erik" <Erik.Wexler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Ms.Driscoll,

Thank you for your prompt attention to this matter and for involving Mr. Karl Keeler to ensure it is addressed thoroughly.

While I appreciate the steps taken, I must express concern regarding the lengthy duration since my initial statement over two and a half months ago. The prolonged nature of these discussions suggests a troubling oversight in recognizing the essential contributions of our medical professionals. Such delays may inadvertently devalue our dedicated service and expertise.

I trust that Mr. Keeler's forthcoming update will promptly and fairly resolve the compensation issues reflecting the past decade of service. I look forward to a resolution that respects the commitments and professional standing of all involved.

Thank you for your understanding and attention to ensuring a just outcome.

Warm regards,

Ramin Ghayoori,MD

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

Ramin Ghayoori <r4g4h4@gmail.com>                                    Tue, Jan 28, 2025 at 8:13 AM
To: "Keeler, Karl" <Karl.Keeler@providence.org>, "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>, "Wexler, Erik"
<Erik.wexler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>


Dear Mr. Keeler,

I am writing to follow up on my previous communications regarding compensation for over ten years of mandatory on-call services provided to St. Joseph Hospital. Despite my commitment and repeated efforts to address this matter amicably, I have not received any compensation for the extensive on-call services I rendered. These services were understood to be mandatory, under the risk of jeopardizing my privileges.

As a gesture of goodwill and in an attempt to expedite a resolution, I have proposed a billing rate that reflects the minimum and is below the current market compensation paid by St. Joseph Hospital to other physicians for similar services. This rate is aligned with the hospital's existing practices over the last decade.

I urgently request a decision regarding the payment for these services. Specifically, I would appreciate if you could confirm whether St. Joseph Hospital intends to issue payment or provide the reasons for any decision not to compensate for these services. Given the lengthy duration of this unresolved issue, I respectfully request a clear and final response by **February 4, 2025.**

This matter involves not only financial equity but also the principle that all professionals should be compensated fairly for their contributions, particularly those vulnerable to potential retaliation. Historically, practices involving uncompensated mandatory labor have been rightfully abolished, and it is imperative that St. Joseph Hospital upholds these standards to ensure a fair and equitable working environment for all its physicians.

I trust that you will address this matter with the seriousness it warrants. I look forward to your prompt and positive resolution.

Thank you for your attention to this urgent matter.

Sincerely,

Ramin Ghayoori,MD

**Billing Details:**
**Service Description:** Mandatory On-Call Rotations
**Total Days Served:** 246
**Rate per Day:** $200 (as per hospital policy)
**Total Amount Due:** $49,200

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Wed, Feb 5, 2025 at 9:11 AM
To: "Keeler, Karl" <Karl.Keeler@providence.org>, "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>, "Wexler, Erik"
<Erik.wexler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Ms Driscoll

I am writing to follow up on a matter that remains unresolved despite my patience and efforts. It
has been over three months, and I have yet to receive a response or payment from the hospital.
Providence St. Joseph has benefited from my services for more than 10 years, yet the minimum
payment owed for my work remains outstanding.

This situation raises concerns about compliance with labor laws in California and the United States,
as well as the core values of Providence. As a working-class individual, I am simply seeking what is
rightfully owed to me—not charity.

I kindly request your assistance in resolving this matter amicably and professionally, ensuring my
rights are respected without fear of retaliation or disrespect. Please advise on the appropriate steps
to address this issue promptly.

Thank you for your attention to this matter. I look forward to your response.

Sincerely,

Ramin Ghayoori,MD

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                                           Wed, Feb 5, 2025 at 11:39 AM
To: "Wexler, Erik" <Erik.wexler@providence.org>, "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>, "Keeler, Karl"
<Karl.Keeler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Mr.Wexler,Ms.Driscoll,Mr.Keeler,

Thank you for your response. I appreciate your clarification regarding the hospital's position. However, I
must respectfully disagree with the characterization of this matter and feel compelled to address several
critical legal and ethical concerns.

For the past 10 years, I have been required to take mandatory on-call shifts as a condition to maintain my
privileges at St. Joseph Burbank. These duties were not voluntary, and I was placed under duress, with the
implied threat of losing my privileges if I did not comply. Despite providing essential services during these
mandated shifts, I have received no compensation. This is a serious violation of both California Labor Code
and federal labor laws, including:

• California Labor Code § 1194, which entitles employees to recover unpaid wages, including interest,
attorney's fees, and costs.

• California Labor Code § 226.7, which prohibits employers from requiring employees to work during
mandated meal or rest periods without appropriate compensation.

• Fair Labor Standards Act (FLSA), which mandates payment for hours worked, regardless of contractual
arrangements, especially when services are rendered under coercion or as a condition of employment.

The absence of a signed call agreement does not absolve the hospital of its legal obligation to compensate
for services rendered—particularly when those services were mandatory and non-negotiable. Legal
precedent supports that **quantum meruit** claims can be pursued to recover the reasonable value of
services provided, even without a formal contract.

Furthermore, I must express concern regarding previous hostile communications from the department
chairman, including emails that were both threatening and unprofessional. Additionally, being questioned
about administrative matters while I was preparing to perform critical procedures in the operating room is not
only inappropriate but also undermines patient safety and contradicts the core values of Providence, which
emphasize respect, integrity, and excellence in patient care.

I am committed to resolving this matter amicably and professionally. However, if the hospital maintains its
current position, I will have no choice but to explore all available legal avenues, including:

• Filing formal complaints with the California Department of Industrial Relations (DIR) and relevant labor
boards. The DIR's Retaliation Complaint Investigation Unit enforces over 45 labor laws that specifically
prohibit discrimination and retaliation.

Case 2:25-cv-02076-SVW-RAO     Document 1     Filed 03/04/25     Page 48 of 104   Page ID
#:48
2/8/25, 2:01 PM                          Gmail - Follow-up on Resolution of Unpaid On-Call Duties

• Initiating legal action to recover unpaid wages, penalties, and legal fees. Under California Labor Code § 98.6, it is unlawful for an employer to retaliate against an employee who has filed a bona fide complaint or claim related to their rights under the jurisdiction of the Labor Commissioner.

• Escalating the issue to media outlets and professional organizations, as this matter pertains to broader concerns about labor practices within healthcare institutions.

I strongly urge the hospital to reconsider its stance and engage in a constructive dialogue to reach a fair resolution, including prompt payment of the outstanding balance. I look forward to your response within **3 business days** outlining the steps you will take to ensure immediate payment.

[Quoted text hidden]

Case 2:25-cv-02076-SVW-RAO    Document 1    Filed 03/04/25    Page 49 of 104    Page ID
#:49
2/8/25, 2:01 PM                        Gmail - Follow-Up on Resolution of Unpaid On-Call Duties

 Gmail                                    Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                              Wed, Feb 5, 2025 at 7:19 PM
To: "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>
Cc: "Keeler, Karl" <Karl.Keeler@providence.org>

### ADDENDUM TO MY PREVIOUS EMAIL:

Dear Mr.Wexler,Ms.Driscoll,Mr.Keeler,

.... ALSO Your assertion that I have been 'unwilling' to sign a call agreement is a misrepresentation. I have been unwilling to sign agreements that offer *substandard compensation* for *mandatory* work. I am, and have always been, willing to sign a fair agreement that reflects the market value of my services....

Thank you,
Ramin Ghayoori MD
[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Follow-Up on Resolution of Unpaid On-Call Duties

**Ramin Ghayoori** <r4g4h4@gmail.com>                                          Wed, Feb 5, 2025 at 7:20 PM
To: "Wexler, Erik" <Erik.wexler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

### ADDENDUM TO MY PREVIOUS EMAIL:

Dear Mr. Wexler, Ms. Driscoll, Mr. Keeler,

.... ALSO Your assertion that I have been 'unwilling' to sign a call agreement is a misrepresentation. I have been unwilling to sign agreements that offer *substandard compensation* for *mandatory* work. I am, and have always been, willing to sign a fair agreement that reflects the market value of my services....

Thank you,
Ramin Ghayoori MD

[Quoted text hidden]

Gmail - Final Request for Resolution Before Legal Action

 

Ramin Ghayoori <r4g4h4@gmail.com>

## Final Request for Resolution Before Legal Action

Ramin Ghayoori <r4g4h4@gmail.com>                                    Fri, Feb 7, 2025 at 6:53 PM
To: "Wexler, Erik" <Erik.wexler@providence.org>
Cc: "Driscoll, Laureen T" <Laureen.Driscoll@providence.org>, "Keeler, Karl" <Karl.Keeler@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Mr. Wexler,

I am reaching out to you directly as a final attempt to resolve this matter before
proceeding with legal action and filing formal complaints with the appropriate authorities.
Despite my patience and repeated efforts over the past decade, St. Joseph Hospital has
benefited from my mandatory on-call services without providing any compensation—a
clear violation of ethical labor standards and legal protections.

As you are aware, these on-call duties were required under the threat of losing
privileges, yet I have not been compensated for the 246 days served, totaling $49,200
at the hospital's stated rate of $200 per day. The hospital's reliance on the absence of a
signed call agreement since 2020 conveniently ignores the fact that I was required to
take call long before that period. Neither California labor laws nor federal statutes permit
institutions to profit from uncompensated, mandatory labor, regardless of administrative
technicalities.

Furthermore, I have never voluntarily agreed to provide services at below-market rates,
nor have I ever signed any agreement obligating me to do so—and I never will. Any
attempt to condition payment on my acceptance of an unfair or coercive agreement is
unlawful, unethical, and unacceptable. The hospital cannot retroactively justify
withholding compensation simply because I refused to accept terms that violate
fundamental labor rights.

This is not just about me—other physicians have faced similar treatment, as evidenced
by the attached documentation. This is a systemic issue that fundamentally undermines
Providence's core values of justice, respect, and fairness. It is deeply troubling that such
a respected institution would tolerate policies resembling indentured servitude, failing to
compensate dedicated professionals who have committed their time and expertise to
patient care.

I am respectfully requesting that you, as a leader committed to ethical responsibility,
take immediate action by:

1. Directing St. Joseph Hospital to comply with state and federal labor laws by issuing payment for services rendered.

2. Reviewing and reforming hospital policies to ensure that no physician is mandated to take on-call duties without fair compensation.

3. Ensuring that no retaliatory actions are taken against me for asserting my legal rights, and allowing me to practice in a safe working environment that prioritizes patient safety.

4. Ceasing any coercive attempts to force me into an unfair agreement as a precondition for receiving compensation that is already owed.

This is my final request for an amicable resolution. If I do not receive confirmation of payment or a commitment to addressing this matter by **Tuesday, February 11, 2025, at 9:00 AM PST,** I will have no choice but to proceed with legal action in court, as well as formal complaints to the California Labor Commissioner, the Department of Labor, the Department of Health, The Joint Commission (JCAHO), the Office of the Attorney General, and relevant media outlets.

Failure to address this matter in good faith will not only result in regulatory and legal consequences but also invite increased public scrutiny. I hope to avoid this outcome and trust that you will take immediate steps to resolve it professionally and ethically.

I look forward to your prompt response and a resolution that aligns with Providence's stated commitment to justice and respect.

Sincerely,

Ramin Ghayoori, MD


**Gmail - Concerns re Backup Call.pdf**
270K





Saint Joseph
Medical Center

501 South Buena Vista Street
Burbank, CA 91505
T 818-843-5111
providence.org

February 7, 2025

**VIA CERTIFIED MAIL AND ELECTRONIC MAIL**

Dr. Ramin Ghayoori
12626 Riverside Drive, Ste 101
Valley Village, CA  91607

Attention:  Ramin Ghayoori, M.D.

Dear:  Dr. Ghayoori,

Providence Health System   Southern California d/b/a Providence Saint Joseph Medical Center ("Hospital") acknowledges receipt of your demand letters dated December 30, 2024, and January 11, 2025, in which you request payment of $49,200 for back-up OB/GYN call coverage services. Your letters contend that you are owed outstanding compensation for these services provided to the Hospital. After a thorough review of the relevant records and information, it has been determined that the Hospital does not owe any retroactive payments for the claimed back-up call coverage services.

For a contract to be legally enforceable, it must contain the essential elements of offer, acceptance, consideration, mutual consent, capacity, and legality, as established in the California Civil Code § 1550. A "meeting of the minds" regarding the contract and its compensation terms is crucial for mutual consent. See Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811, 71 Cal. Rptr. 2d 265, 277 (1998), 513 U.S. 219 (1995). Without mutual consent, there can be no enforceable contract. Furthermore, the federal Stark Law, codified at 42 U.S.C. § 1395nn, prohibits physicians from referring Medicare patients for certain designated health services to entities with which they have a financial relationship unless an exception applies. The law mandates that such financial relationships, including compensation arrangements, must be documented in a written agreement signed by both parties, clearly specifying the terms in advance. 42 CFR § 411.357. Non-compliance with this law can result in significant penalties for both the referring physician and the healthcare entity, including fines and exclusion from Medicare and Medicaid programs.

Additionally, due to the prohibition of the corporate practice of medicine in California, the Hospital does not have an employer-employee relationship with you as a physician. Instead, you serve as a non-contracted, non-employed, privileged provider on the Hospital's Medical Staff.

As you are aware, no signed writing, mutual consent, or acceptance has ever been established between you and the Hospital to compensate you for back-up call coverage services. Before August 1, 2020, all OB/GYN physicians were required to take call coverage for the OB/GYN Department at the Hospital as a condition of their medical staff privileges, and this service was unpaid. Beginning August 1, 2020, all OB/GYN physicians were required to provide back-up call coverage services for the OB/GYN

Department at the Hospital as a condition of their medical staff privileges and were offered $100 per day when performing said services, later increased to $200 per day on August 1, 2021, and always contingent upon signing a contract for these services. All OB/GYN physicians were explicitly informed that compensation for back-up call coverage services would only be provided if they signed the back-up call coverage contract. Despite this, you have repeatedly refused to sign a back-up call coverage contract since July 29, 2020.

To date, you have not signed a contract to be compensated for back-up call coverage services with the Hospital. If you are now willing to sign such a contract arrangement, we are prepared to work with you to create a contract for back-up call coverage services, allowing you to be compensated at the rate of $200 per day for said services performed at the Hospital after the contract's effective date.

Hospital expressly reserves all of its rights and remedies available to Hospital at law or in equity. If you have any questions, please contact our Chief Medical Officer, Dr. Lisa Laurent, at 818-847-4141 or Lisa.Laurent@providence.org. Communications directed to other caregivers within Providence or the Hospital will be re-directed, accordingly.

Sincerely,

Karl Keeler

Chief Executive

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Dr. Ramin Ghayoori Letter

Ramin Ghayoori <r4g4h4@gmail.com>                                   Sat, Feb 8, 2025 at 12:34 PM
To: "Wexler, Erik" <Erik.wexler@providence.org>, ErikW@providence.org
Cc: "Keeler, Karl" <karl.keeler@providence.org>, "Holbert, Diane M" <diane.holbert@providence.org>, "Driscoll, Laureen T"
<Laureen.Driscoll@providence.org>, "White, Tabitha" <tabitha.white1@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

**Dear Mr. Wexler,**

I acknowledge receipt of your response dated **February 8, 2025**. Regrettably, your letter
fails to adequately address the hospital's **legal obligation** to compensate me for
**mandated on-call services**. As outlined in my previous correspondence, I will proceed
with **legal and regulatory actions**, effective **February 11, 2025**.

Your response misapplies legal principles and does not refute the hospital's liability
under **California law**. Below, I systematically address and refute the arguments
presented and reinforce the legal consequences of continued non-compliance.

### 1. Quantum Meruit – Legal Obligation to Pay for Services Rendered

**Hospital's Position:** The absence of a formal contract negates any obligation to
compensate for on-call services.

**My Rebuttal:** Under **California law**, a claim for **quantum meruit** requires four
elements:

1. **Request for services** – The hospital mandated my on-call duties as a **condition
   of medical staff privileges**.
2. **Performance of services** – I provided these services for **246 days**, ensuring
   uninterrupted patient care.
3. **Retention of benefit** – The hospital benefited substantially from my availability,
   which was integral to its operations.
4. **Reasonable value** – The hospital itself established a rate of **$200/day**, which,
   while below market standards ($500–$1000/day at comparable hospitals), confirms
   that my services had measurable economic value.

**Legal Precedent:**

- *Huskinson & Brown, LLP v. Wolf*, 32 Cal.4th 453 (2004) – The **California Supreme
  Court** ruled that **compensation is required even in the absence of a formal
  contract** when services were rendered to another party's benefit.
- *Maglica v. Maglica*, 66 Cal.App.4th 442 (1998) – The **court ruled that it is unjust
  for a party to retain the benefits of another's work without providing fair
  compensation**.

**Conclusion:** The hospital mandated my services, benefited significantly, and is legally required to compensate me.

## 2. Misapplication of Stark Law (42 U.S.C. § 1395nn)

**Hospital's Position:** The Stark Law prohibits compensation without a written agreement.

**My Rebuttal:**

- **Stark Law applies only to physician self-referrals for designated health services.** It does not regulate fair compensation for on-call labor.
- **Even if Stark Law applied (which it does not)**, its **"fair market value" exception** would still permit compensation for services unrelated to referrals.
- **The hospital's own $200/day offer post-2020** is an **admission** that compensation is both standard and expected.

**Conclusion:** The hospital's reliance on Stark Law is a misinterpretation of federal law and does not absolve it of its obligation to pay for services rendered.

## 3. Corporate Practice of Medicine – Irrelevant to Compensation

**Hospital's Position:** The corporate practice of medicine prohibits employer-employee compensation obligations.

**My Rebuttal:**

- **This doctrine only prevents non-physicians from interfering with clinical decisions**—it does **not** exempt hospitals from wage obligations.
- **Quantum meruit applies regardless of employment classification.**

**Conclusion:** The corporate practice of medicine is irrelevant to my claim, and the hospital's attempt to use it as a defense is legally baseless.

## 4. Lack of a Signed Agreement – Irrelevant Under Quantum Meruit

**Hospital's Position:** No signed contract means no obligation to pay.

**My Rebuttal:**

- **A formal contract is NOT required** under *quantum meruit* when services were **mandated** as a condition of privileges.
- In *Huskinson & Brown, LLP v. Wolf*, the **California Supreme Court** ruled that **compensation is required even in the absence of a formal agreement** when services benefit another party.

**Conclusion:** The hospital benefited significantly from my services and is legally obligated to compensate me.

## 5. Condition of Medical Staff Privileges – Hospital's Own Admission of Uncompensated Work

**Hospital's Position:** On-call duties were an unpaid condition of privileges.

**My Rebuttal:**

- This confirms that my services were **not voluntary**.
- If a service is **mandatory**, **California labor laws require fair compensation**.

**Conclusion:** The hospital's own admission strengthens my claim under **quantum meruit** and **California labor law**.

### 6. Violations of California Labor Code – Legal Consequences for the Hospital

By refusing to compensate me for mandated services, the hospital is in violation of multiple provisions of the **California Labor Code**, exposing it to **significant liability**:

**Legal Violations:**

- **Labor Code § 204** – Requires timely payment of wages earned.
- **Labor Code § 1194** – Grants employees the right to recover unpaid wages plus interest and attorney fees.
- **Labor Code § 203** – Imposes **waiting time penalties** of up to **30 days' wages** for failure to pay wages due.

**Consequences for the Hospital:**

- **Unpaid wages:** $49,200 (minimum owed).
- **Statutory penalties:** Potentially exceeding my base claim.
- **Interest & attorney fees:** Legally recoverable.
- **Regulatory investigations & class-action exposure:** Increased risk.


Given the **clear legal precedent**, the **hospital's admission of mandated services**, and its **failure to compensate me**, I demand **immediate payment** of **$49,200** for the **246 days of on-call services performed**.

**Payment Deadline:**
The hospital has until **February 11, 2025** (the previously stated deadline) to remit full payment.

**If payment is NOT received by this deadline, I will proceed with:**

1. **Filing a formal lawsuit** to recover all owed wages, statutory penalties, and legal fees.
2. **Submitting complaints** to the **California Division of Labor Standards Enforcement (DLSE)**, **Department of Labor**, **Office of the Attorney General**, and **other regulatory agencies & media outlets**.
3. **Pursuing additional legal remedies**, including **class-action exposure** for systemic wage theft.

By **continuing to withhold payment**, the hospital **exposes itself** to **significant financial liability**, including **statutory penalties, interest, and class-action**

**exposure**.

I respectfully urge **Providence Health Care** to address this matter **with the seriousness it warrants** and to rectify the issue **without further delay**.

**Sincerely,**

**Ramin Ghayoori, MD**

[Quoted text hidden]

# EXHIBIT-B

**Exhibit B – Peer Emails Corroborating Systemic Enforcement of Unpaid On-Call
Duties & Inequities in the Backup Call System**

**Summary of Exhibit B**: The following emails from **multiple physicians at St.
Joseph Hospital** confirm that:

- **Backup call duties were imposed unfairly**, with some providers
  disproportionately affected.
- **The scope of the backup call system expanded beyond what was
  originally intended**, increasing workload without additional
  compensation.
- **Certain groups were exempt from the backup system, creating an
  inequitable distribution of labor.**
- **Multiple physicians protested the unfairness and sought reform**,
  confirming the systemic nature of the issue.
- **Despite objections, the hospital continued enforcing the system
  without addressing physician concerns.**

**Supporting Emails:**
**February 3, 2025:** Dr. Asatryan and the UCLA Health Physicians Group protest
unfair call distribution and demand reform.
**April 10, 2020:** Dr. Hadadian and Dr. Fazilat reject the backup call pay rate and
demand voluntariness.
**April 13, 2020:** Dr. Fazilat states that **"$50/day is essentially worthless"** and
**physicians should not be forced into a contract affirming "NO VALUE."**
**April 13, 2020:** Dr. Koopersmith argues that **other Providence hospitals pay
fairly**, and St. Joseph should not be different.
**April 22, 2020:** Dr. Ghayoori confirms that **"No one voluntarily agrees to this
plan."**
**April 29, 2020:** Dr. Medrano states that **physicians were required to
participate in the call schedule even if they rejected the stipend, proving that
it was not voluntary.**
**August 12, 2019:** Dr. Medrano threatens to escalate the issue to hospital
leadership if physicians refuse to participate.

2/7/25, 6:45 PM                                          Gmail - Concerns re Backup Call

 Gmail                                    Ramin Ghayoori <r4g4h4@gmail.com>

## Concerns re Backup Call

Asatryan, Alis D. <ADAsatryan@mednet.ucla.edu>                    Mon, Feb 3, 2025 at 9:21 AM
To: Jose Medrano <jmedranomd@yahoo.com>, "meyyip@gmail.com" <meyyip@gmail.com>, AhdootMD
<ahdootmd@yahoo.com>, Vardui MD Asiryan <var_asi@yahoo.com>, Morgan Borden <morgan.n.borden@gmail.com>,
Dawn Cashie <dr.cashie@gmail.com>, Dawn Cashie <dr.cashie@sbcglobal.net>, Joon MD Choi <drjoonchoi61@gmail.com>,
Bahareh Fazilat <drfazilat1@gmail.com>, Cafloresmd <cafloresmd@gmail.com>, Ramin Ghayoori <r4g4h4@gmail.com>,
Ramin Ghayoori <r1g1h1@yahoo.com>, Armine Ghazaryan <armine246@gmail.com>, Samantha MD Han
<drhancyno@gmail.com>, "Isola, Molly K." <MIsola@mednet.ucla.edu>, Tina Koopersmith <tkoop63@gmail.com>,
"Pourzand, Vahideh P." <VPourzand@mednet.ucla.edu>, Parisa Pourzand <parisapourzandmd@gmail.com>, "Rabin, Steven
A. (HealthLink)" <SRabin2001@yahoo.com>, Francesca Rogers <fancyfrankie@me.com>, "Teng, Kiana S."
<KTeng@mednet.ucla.edu>, "gdelshadmd@aol.com" <gdelshadmd@aol.com>, "Kari M. Sollom"
<kari.sollom@providence.org>, "Lark A. Jackson" <lark.jackson@providence.org>, "Melissa R. Wickersham"
<melissa.wickersham@providence.org>, Sandoval Donald <donald.sandoval@providence.org>, "Diamant, Carmel"
<CDiamant@mednet.ucla.edu>, "eallardphil@gmail.com" <eallardphil@gmail.com>, "Benda, Ashley C."
<ABenda@mednet.ucla.edu>, "Nguyen, Cynthia" <CynthiaNguyen@mednet.ucla.edu>, Deborah Yu
<deborah.yu@hotmail.com>


Hello,

We have recently noticed that multiple solo providers at PSJMC use the hospitalist service as their night and weekend
coverage. Which means if any of their patients need C sections the backup doctor gets called in to assist. I'd like to bring
this to everyone's attention for a discussion as this is not fair to those of us who don't use the laborist service this way and
have our own night/weekend coverage. For example, no one assigned backup has to come in to assist at night/on
weekends for UCLA Health patients because there is someone from our group on call 24/7/365, yet on multiple occasions
during our January backup call UCLA providers have been called in to assist with C sections of other providers in the
department.


When we started at PSJMC we were told the backup was for safety purposes to assist in rare cases the hospitalist needs
to do C section for unassigned patients. The current situation is not what was originally intended.


I invite the department to discuss how to best make the backup call more fair and equitable for those of us who don't
routinely need overnight/weekend coverage from the laborist team.


Happy to hear/share opinions via email or in person at a meeting.


Best,

Alis Asatryan MD and the entire UCLA Health Physicians Group (Dr. Isola, Dr. Teng, Dr. Diamant, Dr. Yu, Dr Allard-
Phillips, Dr. Nguyen, Dr. Benda)

**From:** Jose Medrano <jmedranomd@yahoo.com>
**Sent:** Monday, December 30, 2024 11:47 AM
**To:** Asatryan, Alis D. <ADAsatryan@mednet.ucla.edu>; meyyip@gmail.com; AhdootMD
<ahdootmd@yahoo.com>; Vardui MD Asiryan <var_asi@yahoo.com>; Morgan Borden
<morgan.n.borden@gmail.com>; Dawn Cashie <dr.cashie@gmail.com>; Dawn Cashie
<dr.cashie@sbcglobal.net>; Joon MD Choi <drjoonchoi61@gmail.com>; Bahareh Fazilat
<drfazilat1@gmail.com>; Cafloresmd <cafloresmd@gmail.com>; Ramin Ghayoori <r4g4h4@gmail.com>;
Ramin Ghayoori <r1g1h1@yahoo.com>; Armine Ghazaryan <armine246@gmail.com>; Samantha MD Han
<drhancyno@gmail.com>; Isola, Molly K. <MIsola@mednet.ucla.edu>; Tina Koopersmith
<tkoop63@gmail.com>; Pourzand, Vahideh P. <VPourzand@mednet.ucla.edu>; Parisa Pourzand
<parisapourzandmd@gmail.com>; Rabin, Steven A. (HealthLink) <SRabin2001@Yahoo.com>; Francesca
Rogers <fancyfrankie@me.com>; Teng, Kiana S. <KTeng@mednet.ucla.edu>; gdelshadmd@aol.com>; Kari
M. Sollom <kari.sollom@providence.org>; Lark A. Jackson <lark.jackson@providence.org>; Melissa R.
Wickersham <melissa.wickersham@providence.org>; Sandoval Donald <donald.sandoval@providence.
org>; Diamant, Carmel <CDiamant@mednet.ucla.edu>; eallardphil@gmail.com; Benda, Ashley C.
<ABenda@mednet.ucla.edu>; Nguyen, Cynthia <CynthiaNguyen@mednet.ucla.edu>; Deborah Yu
<deborah.yu@hotmail.com>; Jose Medrano <jmedranomd@yahoo.com>
**Subject:** OB Back-Up Schedule for Jan, Feb, March 2025


attached please find the above schedules


On Monday, December 2, 2024 at 01:19:42 PM PST, Jose Medrano <jmedranomd@yahoo.com> wrote:


Revised Dec 2024 Back up Schedule


On Wednesday, October 30, 2024 at 11:49:53 AM PDT, Jose Medrano <jmedranomd@yahoo.com> wrote:


attached please find the back-up schedules for Nov and Dec


Please note that the ID scanner at the front entrance is now working properly so that you don's have to wait for the guard
to open the door after hours


Also, you should or will receive new contracts from Lark Jackson regarding the stipend for back-up call coverage

It remains at $200/day and is for ! YEAR only with a $1mil/3mill coverage

please feel free to sign this new contract and disregard the first one


Dr. Medrano

---

UCLA HEALTH SCIENCES IMPORTANT WARNING: This email (and any attachments) is only intended for the use of the

person or entity to which it is addressed, and may contain information that is privileged and confidential. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality may subject you to federal and state penalties. If you are not the intended recipient, please immediately notify us by return email, and delete this message from your computer.

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Sedi Hadadian** <sedi.hadadian@gmail.com>                                    Fri, Apr 10, 2020 at 6:02 PM
To: Jose Medrano <jmedranomd@yahoo.com>
Cc: MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD David Ahdoot <ahdootmd@yahoo.com>, "Danielle N. Anderson"
<danielle.anderson2@providence.org>, Jose Aranez <josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>,
"MD Morgan N. Borden" <morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi
<drjoonchoi61@gmail.com>, MD Keith Dillon <surgicaldillon@yahoo.com>, "Dr. Kudzai Dombo" <kdombo@obhg.com>, MD
Fazilat Bahareh <bfazilat@hotmail.com>, MD Carlos Flores <cafloresmd@gmail.com>, MD Ramin Ghayoori
<r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>, MD Samantha Han <samhanassist@gmail.com>,
MD Tina Koopersmith <tkoop63@gmail.com>, MD Mary Olender <drmaryolender@yahoo.com>, MD Vahideh Pourzand
<parisa@drpourzand.com>, "M.D. Steven A. Rabin" <srabin2001@yahoo.com>, MD Francesca Rogers
<fancyfrankie@me.com>, "Howard Z. Davis" <howard.davis@providence.org>

Dear Dr. Medrano,

I hope you are doing well and thank you very much for your leadership.

1. I do not agree to be paid $50 per day, almost **$2 per hour** for being back up al all.
   I do believe Doctors time needs to be taken to the consideration and appreciation.
   Below is some example of back up at other hospital:
-  West Hills Hospital. They do not have laborist. For back up $ 550 daily, ongoing process to be increased
-  Valley Presbyterian Hospital paid $25 per hour for back up ($ 600 daily) plus you paid minimum $250 for coming to
   assist and also you can bill.
-  Providence Holy Cross: Back up from Friday noon to Monday 7:00 am is $ 750 plus you can bill
-  Providence Tarzana, paid minimum $360 for coming to assist and also you can bill.

2. I really appreciate if you make the back up call voluntary

3. I am not able to do weekly call as I am laborist in other hospital in some days of week

4. I m not available in 1/4/21 weeks

Thank you and stay safe,
Sedi

[Quoted text hidden]

 Gmail                                                    Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Sedi Hadadian** <sedi.hadadian@gmail.com>                              Fri, Apr 24, 2020 at 11:10 AM
To: Ramin Ghayoori <r4g4h4@gmail.com>, "to: Bahareh Fazilat" <bfazilat@hotmail.com>, "cc: tina koopersmith"
<tkoop63@gmail.com>, Jose Medrano <jmedranomd@yahoo.com>, "Dr. Kudzai Dombo" <KDombo@obhg.com>, Sedi
Hadadian <sedi.hadadian@gmail.com>, MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD David Ahdoot
<ahdootmd@yahoo.com>, "Danielle N. Anderson" <danielle.anderson2@providence.org>, Jose Aranez
<josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>, "MD Morgan N. Borden"
<morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi <drjoonchoi61@gmail.com>,
MD Keith Dillon <surgicaldillon@yahoo.com>, MD Carlos Flores <cafloresmd@gmail.com>, MD Ramin Ghayoori
<r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>, MD Samantha Han <samhanassist@gmail.com>,
MD Mary Olender <drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>, MD Sofya Tsyganovskaya
<tsygan@hotmail.com>, Jose.Medrano@providence.org

Dear Dr. Medrano,

Thank you for your time and effort,

1. Not agree
2. I really appreciate if you make the back up call voluntary
Also as I mentioned previously, some of us not able to do weekly call including me
I'm not available to do back up call in Week of January 1st 2021

I appreciate your time and have a great day,
Sedi
[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Bahareh Fazilat** <bfazilat@hotmail.com>                                    Fri, Apr 10, 2020 at 6:11 PM
To: Sedi Hadadian <sedi.hadadian@gmail.com>
Cc: Jose Medrano <jmedranomd@yahoo.com>, MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD David Ahdoot
<ahdootmd@yahoo.com>, "Danielle N. Anderson" <danielle.anderson2@providence.org>, Jose Aranez
<josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>, "MD Morgan N. Borden"
<morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi <drjoonchoi61@gmail.com>,
MD Keith Dillon <surgicaldillon@yahoo.com>, "Dr. Kudzai Dombo" <KDombo@obhg.com>, MD Carlos Flores
<cafloresmd@gmail.com>, MD Ramin Ghayoori <r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>,
MD Samantha Han <samhanassist@gmail.com>, MD Tina Koopersmith <tkoop63@gmail.com>, MD Mary Olender
<drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>, "Howard Z. Davis"
<howard.davis@providence.org>

> **I completely agree with Dr Hadadian 100%**
> We do not have any contract with OBHG
> Additionally $50/day is NOT acceptable in any circumstances
>
> Please make this back up call voluntary
>
>
> Sincerely
> Bahareh Fazilat MD
> Sent from my iPhone

On Apr 10, 2020, at 6:02 PM, Sedi Hadadian <sedi.hadadian@gmail.com> wrote:

[Quoted text hidden]

 Gmail                                    Ramin Ghayoori <r4g4h4@gmail.com>

## OB/GYN ER Back-Up Panel Schedule - November & December 2019

**Jose Medrano** <jmedranomd@yahoo.com>                              Tue, Nov 5, 2019 at 10:33 AM
To: Ramin Ghayoori <r4g4h4@gmail.com>
Cc: "Sandoval, Donald" <Donald.Sandoval@providence.org>, "ahdootMD@yahoo.com" <ahdootMD@yahoo.com>,
"Anderson, Danielle N" <Danielle.Anderson2@providence.org>, "josearanez9@gmail.com" <josearanez9@gmail.com>,
"var_asi@yahoo.com" <var_asi@yahoo.com>, "Borden, Morgan B" <Morgan.Borden@providence.org>, "Cashie, Dawn M.D."
<Dawn.Cashie@providence.org>, "dr.cashie@sbcglobal.net" <dr.cashie@sbcglobal.net>, "drjoonchoi61@gmail.com"
<drjoonchoi61@gmail.com>, "rdinsay@sbcglobal.net" <rdinsay@sbcglobal.net>, "Roselyn Dinsay, MD"
<rdinsay@rhcfertility.com>, "bfazilat@hotmail.com" <bfazilat@hotmail.com>, "Carlos Flores, MD" <cafloresmd@gmail.com>,
"r1g1h1@yahoo.com" <r1g1h1@yahoo.com>, "Armine Ghazaryan, MD" <Armine246@gmail.com>,
"sedi.hadadian@gmail.com" <sedi.hadadian@gmail.com>, "samhanassist@gmail.com" <samhanassist@gmail.com>,
"tkoop63@gmail.com" <tkoop63@gmail.com>, "parisa@drpourzand.com" <parisa@drpourzand.com>,
"SRABIN2001@yahoo.com" <SRABIN2001@yahoo.com>, "fancyfrankie@me.com" <fancyfrankie@me.com>,
"tsygan@hotmail.com" <tsygan@hotmail.com>, "Sofya Tsyganovskaya, MD" <office@sofyatsyganovskayamd.com>,
"mpwelebir@gmail.com" <mpwelebir@gmail.com>, "Boucher, Tina" <Christina.Boucher@providence.org>, "Medrano, Jose"
<Jose.Medrano@providence.org>, "Francis, Terry" <Terry.Francis@providence.org>, "Wickersham, Melissa R"
<Melissa.Wickersham@providence.org>, "Bianco, Juile" <Julie.Bianco@providence.org>, "Dr. Kudzai Dombo"
<KDombo@obhg.com>

Dr Ghayoori
This topic has been addressed and re-addressed with you multiple times.  I have invited you to attend the meetings to
address this issue to the committee as well but you have not accepted as of yet.
If you wish to pursue this further I will be happy to forward your concerns to both the Chief of Staff and the CMO and have
them respond to you directly
There is a meeting today at 12 noon open to the the staff, please attend if you can.

Dr Medrano

Sent from my iPhone

On Nov 5, 2019, at 10:00, Ramin Ghayoori <r4g4h4@gmail.com> wrote:

[Quoted text hidden]

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Mon, Apr 13, 2020 at 3:10 PM
To: "Steven A. Rabin, M.D." <srabin2001@yahoo.com>

If there is a law.,It need to be for everyone including oBHG physicians

Thanks

Sent from my iPhone

> On Apr 13, 2020, at 11:59 AM, Steven A. Rabin, M.D. <srabin2001@yahoo.com> wrote:
>

 Gmail                                                            Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Bahareh Fazilat** <bfazilat@hotmail.com>                                   Mon, Apr 13, 2020 at 4:00 PM
To: Sedi Hadadian <sedi.hadadian@gmail.com>
Cc: Jose Medrano <jmedranomd@yahoo.com>, MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD David Ahdoot
<ahdootmd@yahoo.com>, "Danielle N. Anderson" <danielle.anderson2@providence.org>, Jose Aranez
<josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>, "MD Morgan N. Borden"
<morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi <drjoonchoi61@gmail.com>,
MD Keith Dillon <surgicaldillon@yahoo.com>, "Dr. Kudzai Dombo" <KDombo@obhg.com>, MD Carlos Flores
<cafloresmd@gmail.com>, MD Ramin Ghayoori <r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>,
MD Samantha Han <samhanassist@gmail.com>, MD Tina Koopersmith <tkoop63@gmail.com>, MD Mary Olender
<drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>

> Dear Dr Medrano
> $50/ day may as well be ZERO
> At least at ZERO we have not given OBHG
> a contractual agreement to affirm us of
> NO VALUE !
>
> Sent from my iPhone
> [Quoted text hidden]

 Gmail                                                    Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**tina koopersmith** <tkoop63@gmail.com>                                  Mon, Apr 13, 2020 at 4:36 PM
To: Bahareh Fazilat <bfazilat@hotmail.com>
Cc: Sedi Hadadian <sedi.hadadian@gmail.com>, Jose Medrano <jmedranomd@yahoo.com>, MD Roselyn Dinsay
<rdinsay@sbcglobal.net>, MD David Ahdoot <ahdootmd@yahoo.com>, "Danielle N. Anderson"
<danielle.anderson2@providence.org>, Jose Aranez <josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>,
"MD Morgan N. Borden" <morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi
<drjoonchoi61@gmail.com>, MD Keith Dillon <surgicaldillon@yahoo.com>, "Dr. Kudzai Dombo" <KDombo@obhg.com>, MD
Carlos Flores <cafloresmd@gmail.com>, MD Ramin Ghayoori <r1g1h1@yahoo.com>, MD Armine Ghazaryan
<armine246@gmail.com>, MD Samantha Han <samhanassist@gmail.com>, MD Mary Olender
<drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>

If the other providence hospitals pay for back up— then ST Joe's should be no different

Sent from my iPhone

> On Apr 13, 2020, at 4:00 PM, Bahareh Fazilat <bfazilat@hotmail.com> wrote:
>
> Dear Dr Medrano
> [Quoted text hidden]

 **Gmail**

Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Wed, Apr 22, 2020 at 9:30 PM
To: Bahareh Fazilat <bfazilat@hotmail.com>
Cc: tina koopersmith <tkoop63@gmail.com>, Jose Medrano <jmedranomd@yahoo.com>, "Dr. Kudzai Dombo"
<KDombo@obhg.com>, Sedi Hadadian <sedi.hadadian@gmail.com>, MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD
David Ahdoot <ahdootmd@yahoo.com>, "Danielle N. Anderson" <danielle.anderson2@providence.org>, Jose Aranez
<josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>, "MD Morgan N. Borden"
<morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi <drjoonchoi61@gmail.com>,
MD Keith Dillon <surgicaldillon@yahoo.com>, MD Carlos Flores <cafloresmd@gmail.com>, MD Ramin Ghayoori
<r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>, MD Samantha Han <samhanassist@gmail.com>,
MD Mary Olender <drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>, MD Sofya Tsyganovskaya
<tsygan@hotmail.com>

Dr.Medrano ,

The answer is already in your email.

No one vulnetarily agrees to this plan.

Thank you,

Sent from my iPhone

On Apr 22, 2020, at 7:38 PM, Bahareh Fazilat <bfazilat@hotmail.com> wrote:

 I don't believe it makes sense for certain doctors to be subjected to mandatory back up calls and in the
meanwhile the OBHG doctors won't be required to do the same
[Quoted text hidden]

 **Gmail**                                                    Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Jose Medrano** <jmedranomd@yahoo.com>                                    Wed, Apr 29, 2020 at 11:02 AM
To: Ramin Ghayoori <r4g4h4@gmail.com>, "to: Bahareh Fazilat" <bfazilat@hotmail.com>, "cc: tina koopersmith"
<tkoop63@gmail.com>, "Dr. Kudzai Dombo" <kdombo@obhg.com>, Sedi Hadadian <sedi.hadadian@gmail.com>, MD
Roselyn Dinsay <rdinsay@sbcglobal.net>, MD David Ahdoot <ahdootmd@yahoo.com>, "Danielle N. Anderson"
<danielle.anderson2@providence.org>, Jose Aranez <josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>,
"MD Morgan N. Borden" <morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi
<drjoonchoi61@gmail.com>, MD Keith Dillon <surgicaldillon@yahoo.com>, MD Carlos Flores <cafloresmd@gmail.com>, MD
Ramin Ghayoori <r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>, MD Samantha Han
<samhanassist@gmail.com>, MD Mary Olender <drmaryolender@yahoo.com>, MD Vahideh Pourzand
<parisa@drpourzand.com>, "M.D. Steven A. Rabin" <srabin2001@yahoo.com>, MD Francesca Rogers
<fancyfrankie@me.com>, MD Sofya Tsyganovskaya <tsygan@hotmail.com>, jose.medrano@providence.org

Thank You everyone for the responses

If and when the stipend is finalized- (I have no clue when that will be), I plan to implement the following:

Since, there are currently 7 out of 19 Physicians who prefer a daily schedule, I will make a schedule where 12 physicians
will be scheduled weekly, then 7 out of the 19 weeks will be balanced between the physicians who prefer daily schedules-
it would probably work out once a month- the Docs are- Dr. Pourzand, Dr, Ghazaryan, Dr. Han, Dr. Rabin, Dr. Fazilat, Dr.
Hadadian, and Dr. Ghayoori
*This may still change if more Docs want daily by the time the stipend is available*

The decision to keep the schedule **mandatory** was made by **consensus** of all the department members who are part of
the call schedule

The decision to accept the stipend was also made by **consensus** of the members

If you feel the stipend is not enough or unacceptable, then you don't have to accept it, I will let the department decide
what to do with those funds, **BUT you will still be part of the schedule**

please understand that even though others are not responding by email, they are letting me know their opinions either
personally or by other means

the May 2020 schedule will be distributed through the Medical Staff

Thank You.

Dr. Medrano

[Quoted text hidden]

 **Gmail**

Ramin Ghayoori <r4g4h4@gmail.com>

## OB Back-Up Call Schedule

**Bahareh Fazilat** <bfazilat@hotmail.com>                                    Wed, Apr 22, 2020 at 7:38 PM
To: tina koopersmith <tkoop63@gmail.com>
Cc: Jose Medrano <jmedranomd@yahoo.com>, Ramin Ghayoori <r4g4h4@gmail.com>, "Dr. Kudzai Dombo"
<KDombo@obhg.com>, Sedi Hadadian <sedi.hadadian@gmail.com>, MD Roselyn Dinsay <rdinsay@sbcglobal.net>, MD
David Ahdoot <ahdootmd@yahoo.com>, "Danielle N. Anderson" <danielle.anderson2@providence.org>, Jose Aranez
<josearanez9@gmail.com>, MD Vardui Asiryan <var_asi@yahoo.com>, "MD Morgan N. Borden"
<morgan.n.borden@gmail.com>, MD Dawn Cashie <dr.cashie@sbcglobal.net>, MD Joon Choi <drjoonchoi61@gmail.com>,
MD Keith Dillon <surgicaldillon@yahoo.com>, MD Carlos Flores <cafloresmd@gmail.com>, MD Ramin Ghayoori
<r1g1h1@yahoo.com>, MD Armine Ghazaryan <armine246@gmail.com>, MD Samantha Han <samhanassist@gmail.com>,
MD Mary Olender <drmaryolender@yahoo.com>, MD Vahideh Pourzand <parisa@drpourzand.com>, "M.D. Steven A. Rabin"
<srabin2001@yahoo.com>, MD Francesca Rogers <fancyfrankie@me.com>, MD Sofya Tsyganovskaya
<tsygan@hotmail.com>

> I don't believe it makes sense for certain doctors to be subjected to mandatory back up calls and in the meanwhile the
> OBHG doctors won't be required to do the same
> The rules should apply to all or none
> As for the money it is less than minimum wage at a rate of $4.16/hr
> Most jobs when you're on call at least a minimum wage is paid for your time
> In any case;
> Thank you so much for your time and effort
> Bahareh Fazilat MD
> Sent from my iPhone

On Apr 22, 2020, at 6:56 PM, tina koopersmith <tkoop63@gmail.com> **wrote:**

[Quoted text hidden]

 **Gmail**

Ramin Ghayoori <r4g4h4@gmail.com>

## OB/GYN ER Back-Up Panel Schedule - November & December 2019

**Ramin Ghayoori** <r4g4h4@gmail.com>                                    Tue, Nov 5, 2019 at 9:59 AM
To: "Sandoval, Donald" <Donald.Sandoval@providence.org>
Cc: "ahdootMD@yahoo.com" <ahdootMD@yahoo.com>, "Anderson, Danielle N" <Danielle.Anderson2@providence.org>,
"josearanez9@gmail.com" <josearanez9@gmail.com>, "var_asi@yahoo.com" <var_asi@yahoo.com>, "Borden, Morgan B"
<Morgan.Borden@providence.org>, "Cashie, Dawn M.D." <Dawn.Cashie@providence.org>, "dr.cashie@sbcglobal.net"
<dr.cashie@sbcglobal.net>, "drjoonchoi61@gmail.com" <drjoonchoi61@gmail.com>, "rdinsay@sbcglobal.net"
<rdinsay@sbcglobal.net>, "Roselyn Dinsay, MD" <rdinsay@rhcfertility.com>, "bfazilat@hotmail.com" <bfazilat@hotmail.com>,
"Carlos Flores, MD" <cafloresmd@gmail.com>, "r1g1h1@yahoo.com" <r1g1h1@yahoo.com>, "Armine Ghazaryan, MD"
<Armine246@gmail.com>, "sedi.hadadian@gmail.com" <sedi.hadadian@gmail.com>, "samhanassist@gmail.com"
<samhanassist@gmail.com>, "tkoop63@gmail.com" <tkoop63@gmail.com>, "parisa@drpourzand.com"
<parisa@drpourzand.com>, "SRABIN2001@yahoo.com" <SRABIN2001@yahoo.com>, "fancyfrankie@me.com"
<fancyfrankie@me.com>, "tsygan@hotmail.com" <tsygan@hotmail.com>, "Sofya Tsyganovskaya, MD"
<office@sofyatsyganovskayamd.com>, "mpwelebir@gmail.com" <mpwelebir@gmail.com>, "Boucher, Tina"
<Christina.Boucher@providence.org>, "jmedranomd@yahoo.com" <jmedranomd@yahoo.com>, "Medrano, Jose"
<Jose.Medrano@providence.org>, "Francis, Terry" <Terry.Francis@providence.org>, "Wickersham, Melissa R"
<Melissa.Wickersham@providence.org>, "Bianco, Juile" <Julie.Bianco@providence.org>, "Dr. Kudzai Dombo"
<KDombo@obhg.com>

The memorandum does not imply anything  about the back up call schedule exclusion criteria

So many physicians are not on the back up panel, specifically,I am referring to laborist panel OBHG
physicians although they are enjoying the same privileges as others and OBHG is contracted with the
hospital.

I am respectfully requesting the detailed copy of policy and procedures in this regards as well.

I strongly feel that randomly assigning back up calls to community physicians and disregarding their
availability is compromising patient's safety

Thank you ,

Ramin Ghayoori,MD


Sent from my iPhone

On Oct 29, 2019, at 3:05 PM, Sandoval, Donald <Donald.Sandoval@providence.org> wrote:


Hello All,


Attached is the November & December 2019 OB/GYN ER Back-Up Panel Schedule. As a reminder the
OB/GYN ER Back-Up Panel schedule is made up by the OB/GYN Department Chairman with no specific
days honored for anyone (see attached memo) and applicable to all OB and/or GYN physicians with the
exception of PSJMC OBHG Laborists & Consult Only physicians. Should you have any questions, do not
hesitate to contact Dr. Jose Medrano, Chairman, OB/GYN Department at (818) 566-1490. Thank you.

Donald

Donald Sandoval, CPCS, Medical Staff Coordinator

Providence Saint Joseph Medical Center

Office: (818) 847-3932    Fax: (818) 847-3935

501 S. Buena Vista St., Burbank, CA 91505

https://california.providence.org/

**<image001.jpg>**

Creating healthier communities, *together*

<image002.jpg>

<image003.jpg>

<image004.jpg>

<image005.jpg>

---

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.
[Quoted text hidden]

## RE: [EXTERNAL] Fwd: Concerns

From:  Wexler, Erik (erik.wexler@providence.org)

To:      r4g4h4@gmail.com; r1g1h1@yahoo.com

Date:  Tuesday, January 19, 2021 at 12:57 PM PST

Hi Ramin…

I'm glad you were able to connect with Dr. Davis.  As you may know, the decision over how on-call is handled at a hospital is left to the department/division and the MEC, and not to the hospital administration. Dr. Davis told me he plans to take your concerns back to the Chair of OB/GYN with the hope they may consider your suggestions.

At least for now, we have improved the call compensation which was a good step forward.



**Erik G. Wexler**
Chief Executive
Providence Southern California
O 949-381-4011
Asst: Tonya Swan – Tonya.Swan@providence.org

 Providence

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Monday, January 18, 2021 12:50 PM
**To:** Wexler, Erik <Erik.Wexler@providence.org>; r1g1h1 <r1g1h1@yahoo.com>
**Subject:** Re: [EXTERNAL] Fwd: Concerns

Dear Mr.Wexler,

Thank you very much for your leadership in the time of Corona and for following up on my concerns.

Dr.Davis discussed the matter with me this morning

As mentioned before,my main concern is not the amount of compensation but it is the nature of the matter as some people are exempted from the calls and some others are forced to take the mandatory calls for below the market values

I believe everyone should be equal before the eyes of the law.

I am looking forward to having this issue resolved soon.

Thank you,

Ramin Ghayoori

On Sun, Jan 17, 2021 at 7:24 AM Wexler, Erik <Erik.Wexler@providence.org> wrote:

> Good morning Ramin,
>
> Victor, Howard Davis and others have re-grouped on the call coverage compensation and have
> presented their revised plan to me.  What they will propose appears to fair and I am supportive
> of their direction.
>
> Victor and Howard will be reaching out to you this week to close the loop.  I sincerely hope you
> feel better with the new solution they will bring to you.
>
> Thank you and stay well!
>
> 
>
> **Erik G. Wexler**
> Chief Executive
> Providence Southern California
> O 949-381-4011
> Asst: Tonya Swan – Tonya.Swan@providence.org
>  Providence

---

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Thursday, January 14, 2021 8:00 PM
**To:** Wexler, Erik <Erik.Wexler@providence.org>
**Subject:** Re: [EXTERNAL] Fwd: Concerns

Thank you

Sent from my iPhone

On Jan 14, 2021, at 4:20 PM, Wexler, Erik <Erik.Wexler@providence.org> wrote:

I understand. It's being worked on at my request, though the immediacy of the Covid situation and our relentless efforts around the vaccine distribution policy development is really a priority.  So please allow me some grace in the midst of this horrific crisis with the need for me to do everything I can as a leader to help us save lives.

Lastly, this is not something I generally handle and won't be the person for others to meet with, so best not to encourage that.  The ministry leadership ultimately will be making the decision and not me.   As promised, I will be back in touch with more info.

Thanks.


<Outlook-EW Outlook.png>
**Erik G. Wexler**
Chief Executive
Providence Southern California
O 949-381-4011
Asst: Tonya Swan – Tonya.Swan@providence.org
<Outlook-Logo Desc.png>


**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Thursday, January 14, 2021 3:46 PM
**To:** Wexler, Erik <Erik.Wexler@providence.org>
**Subject:** [EXTERNAL] Fwd: Concerns


**Dear Mr.Wexler,**


**Hi.I brought up my concerns to your attention and I would like to please receive a response from you.**

The same others keep approaching me and they would like to arrange the same meetings  with me in a month or two months from now

I respectfully do not like to have any further fruitless meetings with the same people again as I had them in the last two years
I feel the sole purpose of such meetings are for me not to voice my concerns any longer.

Thank you,

Ramin Ghayoori MD

---------- Forwarded message ---------
From: **Ramin Ghayoori** <r4g4h4@gmail.com>
Date: Thu, Dec 17, 2020 at 7:59 PM
Subject: Concerns
To: <Erik.wexler@providence.org>, Linden, Kelly M <Kelly.Linden@providence.org>, r1g1h1 <r1g1h1@yahoo.com>, Sedi Hadadian MD <sedi.hadadian@gmail.com>, Bahareh Fazilat <bfazilat@hotmail.com>

**Dear Mr. Wexler,**

**I am reaching  to you to bring up my concerns to your attention.**

**I am part of the providence family in St Joseph, Tarzana, and Holy cross Hospitals.**

**My concerns are about St Joseph Hospital as some community physicians including myself are forced to take backup calls free of charge in order to keep their St. Joseph hospital privileges.**

**Meanwhile, some others, who function as laborists, and enjoy the same privileges are excused from any back up calls as their company is in contract with the hospital and they are well compensated by the administration.**

I feel it is discriminatory and also in conflict with the law. I feel that forcing others to work for free or below the market price is unfair and wrong and it is also harmful to the patient's safety.

I am bringing up this issue to your attention, and as a proud member of the Providence family I would like to resolve this matter internally.

I have already voiced my concerns to the CEO ,Chairman of the Department, Chief of Staff, and Chief Medical Officer of St Joseph hospital during  the last 4 years.

I have not been convinced by any previous responses as the main ones have been "The hospital doesn't have enough budget." ,"It's part of the bylaws and you shouldn't bring up the issue and start any conversation about that, otherwise…"

I believe Providence is a Catholic organization and we need to protect its core values, even at the time of COVID.

Please, kindly, respond directly and in writing.

Thank you,

Happy Holidays

Ramin Ghayoori,MD

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under

applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

## Re: [EXTERNAL] Fwd: Concerns

From:  Ramin Ghayoori (r4g4h4@gmail.com)

To:    Erik.Wexler@providence.org; r1g1h1@yahoo.com

Date:  Monday, January 18, 2021 at 12:50 PM PST

Dear Mr.Wexler,

Thank you very much for your leadership in the time of Corona and for following up on my concerns.

Dr.Davis discussed the matter with me this morning

As mentioned before,my main concern is not the amount of compensation but it is the nature of the matter as some people are exempted from the calls and some others are forced to take the mandatory calls for below the market values

I believe everyone should be equal before the eyes of the law.

I am looking forward to having this issue resolved soon.

Thank you,

Ramin Ghayoori

On Sun, Jan 17, 2021 at 7:24 AM Wexler, Erik <Erik.Wexler@providence.org> wrote:

Good morning Ramin,

Victor, Howard Davis and others have re-grouped on the call coverage compensation and have presented their revised plan to me.  What they will propose appears to fair and I am supportive of their direction.

Victor and Howard will be reaching out to you this week to close the loop.  I sincerely hope you feel better with the new solution they will bring to you.

Thank you and stay well!

**Erik G. Wexler**
Chief Executive

Providence Southern California

O 949-381-4011

Asst: Tonya Swan – Tonya.Swan@providence.org

 Providence

---

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Thursday, January 14, 2021 8:00 PM
**To:** Wexler, Erik <Erik.Wexler@providence.org>
**Subject:** Re: [EXTERNAL] Fwd: Concerns

Thank you

Sent from my iPhone

> On Jan 14, 2021, at 4:20 PM, Wexler, Erik <Erik.Wexler@providence.org> wrote:

I understand. It's being worked on at my request, though the immediacy of the Covid situation and our relentless efforts around the vaccine distribution policy development is really a priority.  So please allow me some grace in the midst of this horrific crisis with the need for me to do everything I can as a leader to help us save lives.

Lastly, this is not something I generally handle and won't be the person for others to meet with, so best not to encourage that.  The ministry leadership ultimately will be making the decision and not me.  As promised, I will be back in touch with more info.

Thanks.

<Outlook-EW Outlook.png>

**Erik G. Wexler**
Chief Executive
Providence Southern California
O 949-381-4011
Asst: Tonya Swan – Tonya.Swan@providence.org
<Outlook-Logo Desc.png>

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Thursday, January 14, 2021 3:46 PM
**To:** Wexler, Erik <Erik.Wexler@providence.org>
**Subject:** [EXTERNAL] Fwd: Concerns

**Dear Mr.Wexler,**

**Hi.I brought up my concerns to your attention and I would like to please receive a response from you.**

**The same others keep approaching me and they would like to arrange the same meetings  with me in a month or two months from now**

**I respectfully do not like to have any further fruitless meetings with the same people again as I had them in the last two years**
**I feel the sole purpose of such meetings are for me not to voice my concerns any longer.**

**Thank you,**

**Ramin Ghayoori MD**

---------- Forwarded message ---------
From: **Ramin Ghayoori** <r4g4h4@gmail.com>
Date: Thu, Dec 17, 2020 at 7:59 PM
Subject: Concerns
To: <Erik.wexler@providence.org>, Linden, Kelly M <Kelly.Linden@providence.org>, r1g1h1
<r1g1h1@yahoo.com>, Sedi Hadadian MD <sedi.hadadian@gmail.com>, Bahareh Fazilat
<bfazilat@hotmail.com>

**Dear**
**Mr. Wexler,**

**I**
**am reaching  to you to bring up my concerns to your attention.**

I
am part of the providence family in St Joseph, Tarzana, and Holy cross Hospitals.

My
concerns are about St Joseph Hospital as some community physicians including myself
are forced to take backup calls free of charge in order to keep their St. Joseph hospital
privileges.

Meanwhile,
some others, who function as laborists, and enjoy the same privileges are excused from
any back up calls as their company is in contract with the hospital and they are well
compensated by the administration.

I
feel it is discriminatory and also in conflict with the law. I feel that forcing others to work
for free or below the market price is unfair and wrong and it is also harmful to the
patient's safety.

I
am bringing up this issue to your attention, and as a proud member of the Providence
family I would like to resolve this matter internally.

I
have already voiced my concerns to the CEO ,Chairman of the Department, Chief of Staff,
and Chief Medical Officer of St Joseph hospital during  the last 4 years.

I
have not been convinced by any previous responses as the main ones have been "The
hospital doesn't have enough budget." ,"It's part of the bylaws and you shouldn't bring up
the issue and start any conversation about that, otherwise…"


I
believe Providence is a Catholic organization and we need to protect its core values,
even at the time of COVID.

Please,
kindly, respond directly and in writing.


Thank
you,
Happy
Holidays

**Ramin**
**Ghayoori,MD**

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

# EXHIBIT-C

**Exhibit C – Hospital Response Contradicting Its Own Claims Regarding Pre- and Post-2020 Compensation**

**Summary of Exhibit C**: This letter from **Providence Health System (Southern California Division)** directly contradicts the hospital's previous claims and **misapplies federal laws** to justify non-payment for **mandated** on-call shifts.

**Key Points:**

- **Admits unpaid mandatory on-call labor pre-2020**, confirming **violation of California Labor Code §§ 1194, 204, and 226.7**.
- **Acknowledges on-call work was a condition of medical staff privileges, contradicting "independent contractor" arguments.**
- **Misapplies Stark Law (42 U.S.C. § 1395nn)** in an attempt to **avoid legal wage obligations**.
- **Contradicts its stance by admitting OB/GYN call pay started in 2020 at $100/day, later increased to $200/day**, demonstrating that a **monetary value was assigned to the work, further proving quantum meruit.**

This exhibit provides direct evidence that the hospital knowingly enforced unpaid labor and is now attempting to justify its actions with legally unsound arguments.



Saint Joseph
Medical Center



501 South Buena Vista Street
Burbank, CA 91505
T 818-843-5111
providence.org

February 7, 2025 — **VIA CERTIFIED MAIL AND ELECTRONIC MAIL**

Dr. Ramin Ghayoori
12626 Riverside Drive, Ste 101
Valley Village, CA 91607

Attention: Ramin Ghayoori, M.D.

Dear: Dr. Ghayoori,

Providence Health System — Southern California d/b/a Providence Saint Joseph Medical Center ("Hospital") acknowledges receipt of your demand letters dated December 30, 2024, and January 11, 2025, in which you request payment of $49,200 for back-up OB/GYN call coverage services. Your letters contend that you are owed outstanding compensation for these services provided to the Hospital. After a thorough review of the relevant records and information, it has been determined that the Hospital does not owe any retroactive payments for the claimed back-up call coverage services.

For a contract to be legally enforceable, it must contain the essential elements of offer, acceptance, consideration, mutual consent, capacity, and legality, as established in the California Civil Code § 1550. A "meeting of the minds" regarding the contract and its compensation terms is crucial for mutual consent. See Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811, 71 Cal. Rptr. 2d 265, 277 (1998), 513 U.S. 219 (1995). Without mutual consent, there can be no enforceable contract. Furthermore, the federal Stark Law, codified at 42 U.S.C. § 1395nn, prohibits physicians from referring Medicare patients for certain designated health services to entities with which they have a financial relationship unless an exception applies. The law mandates that such financial relationships, including compensation arrangements, must be documented in a written agreement signed by both parties, clearly specifying the terms in advance. 42 CFR § 411.357. Non-compliance with this law can result in significant penalties for both the referring physician and the healthcare entity, including fines and exclusion from Medicare and Medicaid programs.

Additionally, due to the prohibition of the corporate practice of medicine in California, the Hospital does not have an employer-employee relationship with you as a physician. Instead, you serve as a non-contracted, non-employed, privileged provider on the Hospital's Medical Staff.

As you are aware, no signed writing, mutual consent, or acceptance has ever been established between you and the Hospital to compensate you for back-up call coverage services. Before August 1, 2020, all OB/GYN physicians were required to take call coverage for the OB/GYN Department at the Hospital as a condition of their medical staff privileges, and this service was unpaid. Beginning August 1, 2020, all OB/GYN physicians were required to provide back-up call coverage services for the OB/GYN

Department at the Hospital as a condition of their medical staff privileges and were offered $100 per day when performing said services, later increased to $200 per day on August 1, 2021, and always contingent upon signing a contract for these services. All OB/GYN physicians were explicitly informed that compensation for back-up call coverage services would only be provided if they signed the back-up call coverage contract. Despite this, you have repeatedly refused to sign a back-up call coverage contract since July 29, 2020.

To date, you have not signed a contract to be compensated for back-up call coverage services with the Hospital. If you are now willing to sign such a contract arrangement, we are prepared to work with you to create a contract for back-up call coverage services, allowing you to be compensated at the rate of $200 per day for said services performed at the Hospital after the contract's effective date.

Hospital expressly reserves all of its rights and remedies available to Hospital at law or in equity. If you have any questions, please contact our Chief Medical Officer, Dr. Lisa Laurent, at 818-847-4141 or Lisa.Laurent@providence.org. Communications directed to other caregivers within Providence or the Hospital will be re-directed, accordingly.

Sincerely,

Karl Keeler

Chief Executive

# EXHIBIT-D

**Exhibit D – Threatening Email from Department Chair Regarding Unpaid On-Call
Shifts**

This email from **Dr. Jose Medrano, Chairman of OB/GYN**, establishes that **mandatory
on-call participation was a condition of my hospital privileges**. The email further
**threatens escalation to hospital leadership and legal counsel** if I did not comply. This
directly contradicts the hospital's position that participation was voluntary and supports my
claim under **California Labor Code § 98.6** for coercion and retaliation.

 Gmail                                              Ramin Ghayoori <r4g4h4@gmail.com>

## OB/GYN Back-Up Panel - Oct-Dec 2018

**Jose Medrano** <jmedranomd@yahoo.com>                              Fri, Oct 5, 2018 at 4:39 PM
To: Ramin Ghayoori <r4g4h4@gmail.com>
Cc: "Sandoval, Donald" <Donald.Sandoval@providence.org>, r1g1h1@yahoo.com

Dear Dr. Ghayoori.

It is part of your hospital privilege requirements to be on the on-call panel and I am sure the many hospitals you have
privileges with also have such requirements.
If you cannot or will not abide by these requirements, then I am forced to present the issue to the Chief of Staff, Chief
Medical Officer, Hospital Administration and the Legal Department.

I understand your frustration since I also have privileges in other hospitals but I also must abide by these rules and
regulations.
I can tell you that since the inception of the Laborist Program I have rarely been called and usually its only because of
true need.

The Doctors who are not on the schedule fulfill the criteria of being over the age of 65, or only have consulting
privileges.  If you have any particular names I would be more than happy to check their statuses and make sure the
situation is rectified.

Please let me know how you want to proceed.  I will wait till next week before I present it to the administration.


Sincerely,

Jose Medrano, MD
Chairman, Dept. of Ob/Gyn
[Quoted text hidden]

# EXHIBIT-E

**Exhibit E – Evidence of Pre-2020 Payment for On-Call Coverage, Contradicting
Providence's Stand**

**Summary of Exhibit E**

This exhibit contains an email from **Donald Sandoval, Medical Staff Coordinator at
Providence Saint Joseph Medical Center**, dated **September 1, 2015**, which provides
**evidence that some form of reimbursement/payment existed for GYN ER coverage
prior to 2020**. This directly **contradicts Providence's claim that no compensation was in
place before August 1, 2020**.

2/8/25, 1:08 PM                                     Yahoo Mail - Aug and sept gyn and OB ER calls

## RE: Aug and sept gyn and OB ER calls

From:   Sandoval, Donald (donald.sandoval@providence.org)

To:     r1g1h1@yahoo.com

Date:   Tuesday, September 1, 2015 at 03:56 PM PDT


Dr. Ghayoori,

Here is the website regarding reimbursement for GYN ER coverage:

http://eahealthcorp.com/

Donald

Donald Sandoval, CPCS, Medical Staff Coordinator
Providence Saint Joseph Medical Center
Office: (818) 847-3932    Fax: (818) 847-3935
501 S. Buena Vista St., Burbank, CA 91505
https://california.providence.org/


Creating healthier communities, together


-----Original Message-----
From: Ramin [mailto:r1g1h1@yahoo.com]
Sent: Tuesday, September 01, 2015 2:46 PM
To: Sandoval, Donald
Subject: Aug and sept gyn and OB ER calls

Dear Mr.Sandoval,

Nice talking to you earlier.
As per our conversation ,please forward the call schedule of Aug and Sept to me.
Thank you,

Ramin Ghayoori

Sent from my iPhone

_____

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

# EXHIBIT-F

## EXHIBIT F-

The following email correspondence demonstrates Plaintiff was forced into
uncompensated on-call shifts, required to pay for a replacement at his own cost,
and subjected to coercive labor conditions. This evidence supports Plaintiff's
claims under the Fair Labor Standards Act (FLSA), California Labor Code, and
Title VII retaliation provisions.

2/25/25, 7:20 AM                                                                    Urgent Concern:

 Gmail                                    Ramin Ghayoori <r4g4h4@gmail.com>

## Urgent Concern:

**Ramin Ghayoori** <r4g4h4@gmail.com>                              Fri, Dec 29, 2023 at 5:22 PM
To: Lisa.Laurent@providence.org
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Dear Dr. Laurent,

I am writing to express a serious concern about Dr. Medrano, the Chief of the OBGYN
Department. Despite being aware of my unavailability due to international travel, he scheduled
me for an on-call backup shift on January 2nd. This schedule was only released yesterday, at a
time when I am out of the country. This decision, which required urgent action from me to ensure
patient safety, represents not just an abuse of authority but also poses a direct risk to patient
care.

Dr. Medrano's insistence on maintaining this schedule, despite knowing I would be abroad,
shows a blatant disregard for hospital protocols and the safety of our patients. I had to make
urgent international calls to find a replacement for this shift. This incident is not isolated and
highlights significant legal and ethical issues, potentially breaching California Board and
Department of Health regulations.

Furthermore, the hospital's practice of mandating such shifts without proper compensation and
my agreement is alarming and may contravene labor laws. I plan to follow up on this matter when
I return.

I urge you to address this issue promptly and await your swift response.

Sincerely, Ramin Ghayoori MD

2/25/25, 7:20 AM                                                            Urgent Concern:

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

## Urgent Concern:

**Laurent, Lisa** <Lisa.Laurent@providence.org>                    Fri, Dec 29, 2023 at 5:44 PM
To: Ramin Ghayoori <r4g4h4@gmail.com>

Good evening, Dr. Ghayoori,

I certainly appreciate your concern about the schedule, but am unsure what I am expected to accomplish with respect to a medical staff issue and within a relatively last minute time frame. Therefore, I would strongly encourage you to speak with Dr. Medrano who I've found to be quite reasonable as well as to ask one of your colleagues to be available/cover for you January 2nd.

Lisa

Get Outlook for iOS

**From:** Ramin Ghayoori <r4g4h4@gmail.com>
**Sent:** Friday, December 29, 2023 5:22:15 PM
**To:** Laurent, Lisa <Lisa.Laurent@providence.org>
**Subject:** [EXTERNAL] Urgent Concern:

You don't often get email from r4g4h4@gmail.com. Learn why this is important

Caution: This email originated from outside of the Providence family of organizations.
**Do not click links or open attachments unless you recognize the sender and know the content is safe. If you suspect this email is phishing or a scam, use the report button in the Outlook toolbar to report it to Providence Cybersecurity.**

[Quoted text hidden]

This message is intended for the sole use of the addressee, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the addressee you are hereby notified that you may not use, copy, disclose, or distribute to anyone the message or any information contained in the message. If you have received this message in error, please immediately advise the sender by reply email and delete this message.

2/25/25, 7:20 AM                                                                 Urgent Concern:

 Gmail

Ramin Ghayoori <r4g4h4@gmail.com>

**Urgent Concern:**

**Ramin Ghayoori** <r4g4h4@gmail.com>
To: "Laurent, Lisa" <Lisa.Laurent@providence.org>
Bcc: Ramin Ghayoori <r4g4h4@gmail.com>

Fri, Dec 29, 2023 at 5

Dear Dr. Laurent,

This is a matter of patient safety and abuse of power.

Thank you for your attention to this serious matter.

Happy Holidays,

Ramin Ghayoori

[Quoted text hidden]

endicia

USPS PRIORITY MAIL

C058

US POSTAGE AND FEES PAID
PRIORITY MAIL INT
Mar 03 2025
Mailed From ZIP 91604
PRIORITY MAIL
ZONE 1 FLAT-RATE ENV
18556420
Commercial

Ramin Ghavoori
325 LAUREL CANYON BLVD
STUDIO CITY CA 91604

Shipped using PostalMate
Pkg 287793-




004996

SHIP TO:
UNITED STATES DISTRICT COURT
CLERK OF THE COURT CENTRAL DISTRICT OF CALIFORNIA
350 W 1ST ST STE 4311
LOS ANGELES CA 90012-4565

RECEIVED
CLERK, U.S DISTRICT COURT

MAR -4 2025

CENTRAL DISTRICT OF
BY

USPS TRACKING #

9405 5118 9956 0918 5178 98

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE ®

PRIORITY MAIL ®

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

EP14F July 2022
OD: 12 1/2 x 9 1/2

PS00000100000014

This package is made from post-consumer waste. Please recycle - again.



**PRIORITY® MAIL**

**UNITED STATES POSTAL SERVICE®**

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**TRACKED ■ INSURED**



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2